THE STATE OF KANSAS *ex rel.* JOHN GUTHRIE *v.* THE BOARD OF COMMISSIONERS FOR THE MANAGEMENT AND INVESTMENT OF THE SCHOOL FUND, Respondents.

*Application for Mandamus, Shawnee County.*

If an act of the legislature prescribes a rule of action not authorized by the limitations of the constitution, such act is void.

The act of the legislature of March 2d, 1868, providing for the issuance and sale of $30,000 of state bonds, directing respondents to invest an amount of the permanent school funds of the state, sufficient to pay the officers and members of the state legislature and current expenses of the state in said bonds, *held* void, it being irreconcilable with the constitutional restrictions on creating public debts [Art. 11, §§5, 6, 7], and with the constitutional method of raising a revenue for the purposes indicated [Art. 11, §3], which is by taxation.

The latter section, *held* directory to the legislature only. Its object was to prevent extravagance, by calling immediate and general attention to it in the levying of an adequate tax to pay expenses. *Semble*, should the tax levied be too low, the same end would be reached by the depreciation in scrip.

Payment of the current and legislative expenses *held* not to be "extra-

ordinary expenses," within the meaning of art. 11, sec. 5, but the ordinary charges of a government, and to be met by taxation.

To issue the bonds of the state therefor, and to draw moneys from the school fund thereon, is the creation of a debt, within the meaning of art. 11, secs. 5 and 6.

*Semble,* an unpaid warrant of the state is a debt in one sense, but not in the sense of the constitutional provision referred to. [7 Ohio S., 529.]

The law of March 2d, 1868, imposed no obligation upon respondents to pay out school moneys on relator's bond, issued under that law. Writ of mandamus *refused.*

A joint resolution on the same subject, not published, is not in force. [Art. 2, § 19, Const.]

The relator's failure to show that he has any interest in the action of the respondents prayed for, because it does not appear that they had money, *held* fatal to the application for mandamus.

The Supreme Court will not interfere with the discretion, as to time and terms, imposed on respondents by the act of March 2d, 1868.

The facts of the case appear in the opinion of the court.

*John Guthrie,* for himself.

*Attorney General, George H. Hoyt,* for respondents.

*John Guthrie, per se,* contended :

1. The question submitted involves the constitutionality of the act of March, 1868, and its conflict with art. 11, sec. 3, of the constitution.

2. I assume the proposition that this section of the constitution imposes a duty on the legislature to " provide, each year, for raising revenue sufficient to defray the current expenses of the state." It is a duty imposed on each legislature to levy a tax on all the property of the state, subject to taxation, for the purpose of raising revenue " sufficient to defray the

current expenses of the state, for the next current year." This is, perhaps, the only mode of raising revenue, and contemplates that the legislature shall, while in session, provide for the current expenses of the next year. But supposing that the legislature fails to perform this duty? Another legislature is elected by the people; no provision had been made to pay the necessary expenses of the meeting of the legislature; there are no funds provided to pay for halls, fuel, lights, clerks, officers, or the members. The question arises, may not the legislature, in order to perform the necessary legislation for the state, issue bonds for the purpose of meeting such "extraordinary expenses?" If this proposition is denied, then I submit that the government is at an end, virtually, if not in fact.

3. Again, I insist that the legislature is the sole judge to say and determine when such an emergency exists. (6 *Ohio S.*, 176.) I claim that such loan is within the fifth section of art. 11 of the state constitution, and that the legislature may, in such case, say and determine when such loan may be made. But I claim that such an emergency may arise when the necessities of the case are higher than the organic law itself; that the self-existence of the government may require the legislature to resort to extraordinary measures to secure funds to carry on the state government, and that the case at bar is one of such cases; and of this the legislative and executive departments of the state are the sole judges.

4. I submit the proposition that the issuance of the bonds, and the investment of the school funds in such bonds, as contemplated by the act and joint resolution, is not the creation of a debt, but only changing the form of such debt; and that it was competent for the

legislature to direct and require the defendants to make such disposition of the funds under their control. *The State of Ohio* v. *Arnold Midberry et al.*, 7 O. S., 528.

*Attorney General, Hoyt,* for respondents, submitted :

1. The act of the legislature providing for the issuing and sale of state bonds, for the purpose of paying the salaries of officers and members of the legislature, and the current expenses of the state, is repugnant to and conflicts with the provisions of article 11 of the constitution. *Art.* 11, §§ 3, 5, 6, 7, *Const.*

2. Salaries of the legislature are not an extraordinary expense, nor can the "current expenses of the state" be construed as an extraordinary expense.

3. Nothing in this act indicates a purpose to provide for any extraordinary expense, and the language of the law must be construed according to the strict and primary acceptation of the terms used.

4. If the treasury of the state fails to supply funds to meet the salaries and expenses for which appropriations are made, scrip issues in lieu thereof, and the fact that there is a deficit of money to meet such regular and ordinary expenses, does not render the expenses extraordinary in their nature.

5. To show, by contemporaneous acts, that the legislature did not intend to provide for the sale of these bonds for the purpose of defraying extraordinary expenses, see appropriation bills for 1868, for legislative and judicial officers, current expenses of the state, and general revenue law for 1868.

6. There is no presumption resulting from the action of the legislature which binds the trustees of this fund to receive that action as evidence of a true construction

of the constitution. That would be a concession of judicial omnipotence to the legislature.

7. The legislature, like other departments of government, exercises only delegated authority, and any act passed by it not falling fairly within the scope of "legislative authority," is as clearly void as though expressly prohibited. *C. W. Louisville R. R.* v. *Commissioners Clinton Co.,* 1 *Ohio S.,* 77.

*By the Court,* KINGMAN, C. J.

The relator shows, by affidavit, that he is the owner of a warrant, drawn by the auditor of state on the treasurer, for $93, it being for a portion of his pay as member of the legislature for the current year; that he presented said warrant to the state treasurer, and was refused payment for want of funds. That the governor of the state had tendered to the board of commissioners for the management and investment of the school fund the bonds of the state, as provided by the act entitled "An act providing for the issuance and sale of the bonds of the state, for the purpose of paying the officers and members of the state legislature, and current expenses of the state," approved March 2d, 1868, and that the board had refused to invest the funds under their control in said bonds. Upon this showing, the relator moves the court for a writ of mandamus, compelling the board to make such investment. The board of commissioners appear and resist the motion, upon the ground exclusively that the act above referred is not authorized by the constitution.

The motion might well be denied on the showing made, for other reasons than that presented by the defendants. Among others, it does not appear that the

relator has any direct interest in the action of the board, for it is not shown that the board has any money under their control to buy bonds with. Nor is it manifest that if they had money, and invested it in the bonds, the relator would get any of it.

Again, under the act holding it valid, the board has a discretion as to time and terms, which it does not appear has been exercised, and with which a court will not interfere. But, as the relator and the board agree in asking a decision of the motion on the sole ground of the constitutionality of the act above referred to, we do not feel at liberty to avoid the duty, especially as a refusal of the writ upon the grounds first indicated, would probably bring the main question again before the court for consideration.

The act referred to directs the issue and sale of $30,000 of the bonds of the state (with interest coupons attached), payable in twenty years from date, and directs, in section four, "that the commissioners for the management and investment of the school funds are authorized and directed to invest an amount of the permanent school funds in said bonds, sufficient to satisfy the requirements of this act." The act further provides that the bonds shall not be sold for less than ninety cents on the dollar ; provides, also, for the levy of a tax to pay the interest and create a sinking fund, and contains other provisions necessary to carry out the objects thereof.

The object of the enactment is stated in the title, to be for the purpose of paying the officers and members of the state legislature, and current expenses of the state. It is contended by the respondents that this act is in conflict with the provisions of article 11 of the constitution of the state.

· Those parts of that article bearing upon this question are as follows :

"SECTION 3. The legislature shall provide, each year, for raising a revenue sufficient to defray the current expenses of the state."

"SECTION 5. For the purpose of defraying extraordinary expenses, and making public improvements, the state may contract public debts."

"SECTION 6. No debt shall be contracted by the state except as herein provided, unless the proposed law for creating such debt shall first be submitted to a direct vote of the electors of the state, at some general election ; and if such proposed law shall be ratified by a majority of all the votes cast at such general election, then it shall be the duty of the legislature next after such election, to enact such law, and create such debt, subject to all the provisions and restrictions of the preceding section of this article."

Section 7 authorizes the state to borrow money to repel invasion, suppress insurrection, to defend the state in time of war.

The question we have to decide is, whether the act of March 2d, 1868, above referred to, is in contravention of the constitutional provisions as to contracting debts. If it is, however unpleasant may be the duty of differing with a co-ordinate branch of the government as to its powers, it is still a duty we are not at liberty to decline. If an act of the legislature prescribes a role of action not authorized by the limitations imposed by the fundamental law of the state, it cannot become a law, and the courts cannot so regard it. Courts are bound by the law. But one of two incidentally conflicting rules can be observed, and if one of such rules be found in the constitution and the other

in the act of the legislature, we are to follow the fundamental law, and must necessarily hold the act of the legislature void. So in this case, if the constitution inhibits the contracting of such debts as the act provides for, we cannot say the respondents shall comply with the terms of the legislative enactment, and disregard the constitutional limitations.

If this is a conflict, the constitution must prevail. We think there is such a conflict, and that it is irreconcilable. Article 11 prescribes the general financial policy of the state. Section 3 of that article declares it the duty of the legislature to provide the revenue for the current expenses of the state each year. This section would be popularly taken to mean that taxes should be levied each year to meet the current expenses. And this is precisely the technical construction.

The word "revenue," in this connection, means the income of the government arising from taxation, excise and the like. *See Bouv. Law Dic., title Revenue; Story on Const.,* § 880.

This section is directory to the legislature only. It prescribes a duty to that body, and a rule to guide them in the discharge of that duty. From the exercise of their discretion under that section, there is no appeal save to the people, the great conservative power in a popular government.

If the taxes levied are inadequate to meet the current expenses, those having claims against the state will find in depreciated scrip just cause and adequate motive to make their grievances known, and the people can correct the evil by instructing their agents to make the taxes higher or the expenses less, as they may deem right. The section is quoted and commented on, as necessary to show the settled policy of the state.

Its object was to prevent extravagance by calling immediate and general attention to it in the shape of high taxes, or in depreciated credit, thus indirectly, but very efficiently, prescribing limitation upon that subject. The 5th, 6th and 7th sections of article eleven, are the only ones authorizing a public debt. An examination of these sections will show, conclusively, that in none of them, nor in all of them, will there be found any authority for the act of the legislature under consideration.

The 5th section authorizes a public debt for extraordinary expenses, and for making public improvements. It is claimed by the relator that the legislature is the sole judge of what is an extraordinary expense, and that its decision on that matter is not reviewable.

If this be true, which is neither admitted nor denied, it still does not apply to this case, for there is no pretense in the law that the expenses were extraordinary in their character. The object is plainly stated in the title to be for the purpose of paying the officers and members of the legislature, and current expenses of the state.

These are the common and ordinary charges of a government, accruing necessarily each year. None more so can be imagined. They are precisely what the constitution declares shall be met by annual taxation. The legislature has not even pretended to declare the expenses extraordinary in their character, or in the circumstances attending them.

The court is not placed in the disagreeable position of disagreeing with the legislature on this point. The law would not have been plainer or more explicit had it said for "ordinary expenses," than it now is. The object is declared, and it is too plain to admit of a

moment's cavil. If such expenses are not of an ordinary character, there can be none.

The relator seems to have felt the full weight of this conclusion, which he seeks to avoid by claiming "that an emergency may arise when the necessities of the case are higher than the organic law itself. That the self-existence of the government may require the legislature to resort to extraordinary measures to secure funds to carry on the state government, and that the case at bar is one of such cases; and of this the legislative and executive departments of the state are the sole judges."

The first proposition in this quotation from the brief of the relator, we shall not comment on. It may be true; it certainly is dangerous. The record meets our approbation.

We can imagine circumstances that would amply justify the legislature in resorting to extraordinary measures to secure funds. The constitution has wisely made provision for such cases, with such prudent limitations and restrictions as seemed necessary to protect the people of the state. But this is not one of those cases, and the legislative and executive departments (whether the sole judges or not), have so said in the act itself, as has, we trust, been before made apparent.

Again, it is claimed under the fifth section, that the issue of the bonds and the investment of the school funds in such bonds as contemplated by the act, is not the creation of a debt, but only changing the form of such debt. This is fallacious. The constitution speaks of contracting a debt, and this law contemplates the contracting of one debt to pay another—the contracting of a permanent debt to the school fund, to pay off

certain current expenses. If a construction such as that contended for should prevail, it would allow the legislature to break down constitutional restrictions by their own neglect.

They need not make the appropriations for current expenses exceed the taxes they are willing to impose; then, calling the deficiency a debt, fund it, make it permanent, and the safeguards of the constitution disappear.

We are not disposed to deny that an unpaid warrant of the state is a debt, in one sense of that term; but it could never be expected that any financial scheme extending over a state could be so arranged as that the revenue, each year, should exactly balance the audited claims. Such a construction would demand an impossibility; but the general financial policy of the state is to make them balance as near as may be, and this does not contract a debt in the meaning of the constitution.

The Supreme Court of Ohio says, with propriety: "Under the system of prompt payment of expenses and claims as they accrue, there is undoubtedly, after the accruing of the claim, and before its actual presentation and payment, a period of time intervening in which the claim exists unpaid; but to hold that for this reason a debt is created, would be the misapplication of the term "debt," and substituting for the fiscal period a point of time between the accruing of a claim and its payment, for the purpose of funding a debt; but appropriations having been previously made, and revenue provided for payment as prescribed by the constitution, such debts, if they may be so called, are, in fact, in respect to the fiscal year, provided for with a view to immediate adjustment and payment. Such

financial transactions are not, therefore, to be deemed debts." · 7 *Ohio S.*, 529.

Whatever may be the exact nature of the claim, it is one to be met by raising a tax, and not by creating a permanent debt, which cannot be done under the section for any such purpose as that declared in the law.

· Section six does provide for the contracting of a debt of the kind and character mentioned in the act before us, but makes the submission and ratification of such proposed law to a vote of the people a necessary prerequisite to its validity.

Section seven provides for a debt, for two purposes only. It is not claimed that either of these sections sanctions the law in question. They are referred to by us to exhibit the general financial system of this state, and show that ample power is confided to the legislature to meet every exigency, if wisely and prudently used.

It is manifest that, in our view, the legislature had no power to contract the debt in that way, and, therefore, the law imposed no obligation upon the respondents, and they have proved faithful guardians of the funds committed to their care by the constitution, in preserving them inviolable.

The writ of mandamus must be refused. The affidavit of the relator, as well as his brief, refers to a joint resolution on this same subject, and of the same general tenor as the law we have examined. At least, so far as this case is concerned, it is clearly a law of a general nature, and has never been published; therefore, we have not noticed it in this opinion, as it is not yet in force. *Art.* 2, § 19, *Const.*

Nor must our silence upon section nine of article six

be taken as indication of any opinion that that section might not have a controlling influence in this case. We are content to rest our decision on the grounds before stated, and leave the interpretation of this section till it shall become necessary.

All the justices concurring.