No. 39,092

The State of Kansas, ex rel., Harold R. Fatzer, Attorney General, *Plaintiff*, v. The Kansas Armory Board and Willis E. Baker, Chairman; Charles C. Calnan, W. W. Keith, Fred Ice, Kenneth H. Peters, W. R. Horton, Jr., members thereof; and Edward F. Arn, Governor; Joe Nickell, Adjutant General (Acting Secretary of the Board); Henry C. O'Reilly, ex officio members thereof, *Defendants*.

(256 P. 2d 143)

Opinion filed April 11, 1953.

*William P. Timmerman,* assistant attorney general, argued the cause and *Harold R. Fatzer,* attorney general, was with him on the briefs for the plaintiff.

*Joe Nickell,* adjutant general, argued the cause, and *Clarence J. Moore,* of Horton, was on the briefs for the defendants.

The opinion of the court was delivered by

Smith, J.: This is an action in quo warranto wherein the state on the relation of the attorney general questions the authority of the Kansas Armory Board and the members thereof to issue revenue bonds pursuant to G. S. 1949, 48-317 to 48-321 on the ground the above statutes are unconstitutional and hence void and do not confer power upon the Kansas Armory Board to issue bonds thereunder.

The petition alleged first that the board was made a body politic and corporate by G. S. 1949, 48-315 to 48-321, and had power to build, establish and maintain armories throughout the state; that at a called meeting on January 13, 1953, the board adopted a reso-

lution in which it proposed to issue $25,000 worth of revenue bonds for the purpose of paying all or part of the cost of constructing, remodeling and improving the armory building at Leavenworth, such being the first resolution to be adopted in a program involving a number of such projects throughout the state, all of which would aggregate more than a million dollars; that this particular issue was to be known as the Kansas Armory Board Revenue Bond Series B and was to consist of 50 bonds of like date and tenor and to carry a rate of 3¾ percent interest and to run for a period of eleven years; that the resolution provided these revenue bonds would be payable solely and only from the revenue derived from the rental operation of the armory; that G. S. 1949, 48-317 provided in Section "H" thereof that in order to secure the payment of principal and interest of such securities the armory board was empowered to execute and deliver a lease to the State of Kansas through the adjutant general, who should execute a lease for the state for the building to be used for armory purposes and for no other purpose. A copy of the proposed lease was attached to the petition.

The petition further alleged that in preparing the bond transcript and passing the resolution the board purported to be acting pursuant to G. S. 1949, 48-315 to 48-321 and would unless ousted from exercising such power issue and sell Kansas Armory Board Revenue Bonds in accordance with such transcript and resolution.

The petition then alleged that G. S. 1949, 48-315 to 48-321 is unconstitutional and void and wholly fails to invest the Kansas Armory Board with power and authority to issue such revenue bonds and to create an indebtedness by reason of the fact that: First, in purporting to confer upon the board the power to issue and pledge revenue for the payment thereof the sections violated article 11, sections 6 and 7 of the constitution of the state, which sections specifically prohibit the state of Kansas from contracting a debt except as therein provided and unless the proposed law for creating the debt be submitted first to a direct vote of the electors of the state at some general election that the proposal to create an indebtedness for reconstruction, remodeling and improving an armory at Leavenworth and the plans to do so in a number of Kansas towns had not been submitted to a vote of the electors and had not been approved by them; second, that G. S. 1949, 48-319, provides that once the revenue bonds have been paid, the armory board shall donate, transfer and convey such property by appropriate instru-

ment of transfer and conveyance to the state and this shows the Kansas Armory Board is in fact and in law an arm of the government of the state and is not a separate entity or body politic, and that the scheme is a subterfuge to allow the state to do indirectly what it cannot do directly; third, the state of Kansas through the adjutant general would rent these buildings and the adjutant general contemplates paying each and every partial payment of rent from an appropriation made to him by the legislature. Hence the state will actually be renting the buildings and actually be paying for them and thus be doing indirectly what it cannot do directly; fourth, the above being true, it will be a violation of article 2, section 24, of the constitution, which provides that no money shall be drawn from the treasury of the state except in pursuance of a specific appropriation made by law and no appropriation shall be made for a longer period than two years; that the law purports to empower the armory board to make a permanent appropriation for a period of time exceeding two years and pledges the income and revenue of the state for a period of eleven years; fifth, that G. S. 1949, 48-317 (f) purports to exempt revenue bonds issued by the board and the income derived therefrom from taxation by the state, counties and municipalities therein except inheritance taxes of the state; that such exemption was an unconstitutional discrimination and classification of property for taxation purposes and was in direct violation of the prohibitions contained in article 11, section 1 of the constitution.

The petition further alleged the board was purporting to exercise powers and privileges purported to be conferred upon it by G. S. 1949, 48-317 to 48-321 and by so doing was usurping powers not authorized under the constitution, and such sections were wholly unconstitutional and void in all particulars and did not confer any such power upon the Kansas Armory Board; that unless ousted from the exercise of such purported powers the Kansas Armory Board would issue and sell its present issue of revenue bonds, and would continue to issue and sell such bonds in the future.

The prayer was that the court oust the board from carrying out the terms and provisions of the transcript and resolution and from attempting to issue any revenue bonds which might become a debt of the state and be ousted from pledging of revenue from such works to pay the indebtedness.

The bond, a copy of which was attached to the petition, provides

that it should bear a rate of interest of 3¾ percent per annum; that it was one of a series of fifty bonds of like tenor and amount issued by the Kansas Armory Board providing funds to reconstruct, remodel and improve an armory building for the use of the Kansas National Guard; that the bonds were issued under the authority and in full compliance with the constitution and statutes of the state, particularly sections 48-315 to 48-321; that the bond and the income derived therefrom should be exempted from all state, county and municipal taxation except inheritance taxes of the state and that for the prompt payment of the principal and interest there the Kansas Armory Board had covenanted and irrevocably pledged the income and revenue arising from the operation of such armory building; that such armory board revenue bond was not and should not become an obligation of the state of Kansas, or of the Kansas Armory Board, or of the individual members or officers thereof and could not be paid from any general tax levied by the state. The bond further provided that all acts, conditions and things required to be done to exist, happen or be performed precedent to and in the issuance of this Kansas Armory Board Revenue Bond had been done and until the bond was paid the board would to the best of its ability keep the armory building leased and occupied, collecting all rents and profits therefrom adequate to meet all requirements of principal and interest on such bonds.

The defendants answered by first denying all of the allegations except those specifically admitted. They admitted the allegations with reference to the issuance of the bonds but denied that G. S. 1949, 48-315 to 48-321 were unconstitutional for any of the reasons given in the petition.

The lease which the board had entered into with the adjutant general first described the property and referred to the statutes under which it was made; provided for the monthly rental of $250 a month for the term of eleven years and that the payment should be made with the secretary-treasurer of the Kansas Armory Board by the finance and disbursing officer of the adjutant general's department of the state, in accordance with the provisions of section 48-220 and that the lease further provided it was agreed that the payment of rent was contingent upon and subject to the appropriation of necessary funds by the legislature for the purpose of armory rentals during such annual period and that the lease should terminate as to the parties at the end of the then current fiscal year of the lease and peaceable possession to said premises should be given

the lessor. It was further agreed that the lessee should at all times during the continuance of the lease and at the lessee's expense keep and maintain the premises in good repair and keep them insured against all hazards resulting from fire, windstorm and other natural causes.

Stated succinctly the armory board is undertaking to issue and sell revenue bonds for the purpose of paying all or part of the cost of reconstructing an armory building for the National Guard of the state at Leavenworth, Kan.

It is the first of a number of like projects throughout the state. The National Guard organizations are located at various cities in the state. They require a peculiar type of building and it is the intention of the board to issue bonds similar to this issue in order to construct armories at these various cities. These proposed issues will amount in the aggregate to over a million dollars. All steps necessary to the issuance of the bonds have been taken. The state on the relation of the attorney general has instituted this action. Actually its purpose is to test the validity of the issue and the constitutionality of G. S. 1949, 48-315 to 321.

The state contends the sections above quoted mentioned pursuant to which the board proposed to issue the bonds are unconstitutional and void for four reasons as follows: They provide for the creation of a state debt without a vote of the electors, contrary to article 11, sections 6 and 7 of the constitution of the state of Kansas; they provide for a permanent appropriation of income derived from the buildings in direct violation of article 2, section 24 of the constitution; the Kansas Armory Board is not a separate entity or body politic; they purport to exempt the revenue bonds from taxation by the State of Kansas or any political subdivision and such exemption is an unconstitutional discrimination in violation of article 11, section 1 of the constitution.

G. S. 1949, 48-315 to 321, to which reference is made so often in the petition, were enacted at the session of 1947. (See chapter 307 of the Session Laws of 1947.) G. S. 1949, 48-315 including 321 provide as follows:

"There is hereby created the Kansas armory board (hereinafter sometimes designated as the board) which is made a body politic and corporate. Said board shall constitute an agency of the state of Kansas and shall consist of nine members. The governor of the state of Kansas, the adjutant general, and the judge advocate general shall at all times be ex-officio members of the board. The remaining six members shall be appointed by the governor, one member

to be appointed from each of the six congressional districts of the state, and any vacancy arising among the six members appointed by the governor shall be filled by appointment by the governor in like manner. The terms of office for the appointed members shall be four years, except that of the board first appointed one member shall be designated to serve a term of one year, one to serve a term of two years, two to serve a term of three years, two to serve a term of four years, and their successors, in each case, to serve a term of four years. The adjutant general shall be secretary-treasurer of the board, and the board shall elect from its own membership a chairman and a vice-chairman for such terms as the board shall deem advisable. The board shall have an official seal and the secretary-treasurer shall have custody thereof. The secretary-treasurer shall keep a full and complete record of proceedings by the board and the financial activities thereof and shall execute and file a bond in an amount and with such surety as the board may approve, payable to the people of the state of Kansas and conditioned upon the faithful performance of his official duties. Members of the board shall serve without compensation but shall be reimbursed for their actual and necessary expenses. (L. 1947, ch. 307, § 1; April 16.)

"The board shall act by resolution adopted at a meeting thereof called and held in accordance with such bylaws or rules and regulations as it may adopt. A majority of the members of the board shall constitute a quorum for the transaction of any business at a meeting duly called and convened. A copy of the proceedings of the board certified by the secretary-treasurer under its seal as being a true copy of proceedings thereof shall constitute adequate evidence of action by the board. (L. 1947, ch. 307, § 2; April 16.)

"The board shall have full power and authority to do all acts necessary and appropriate in connection with the acquisition by gift, purchase, or construction, or by any two or more of such methods, of buildings, sites therefor, and equipment suitable for armory purposes. In order to accomplish its purpose and duty the board shall have the following express powers, without, however, being limited thereto:

"(a) To sue and be sued.

"(b) To enter into contracts.

"(c) To employ and pay such agents, employees and counsel as it may deem necessary and appropriate.

"(d) To accept gifts of money, services and property of any kind from any source.

"(e) To acquire sites, buildings, equipment and other property of any description, both real and personal, suitable for armory purposes by gift, purchase, construction, or by condemnation under the provisions of the laws then governing the appropriation and condemnation of land by railroad companies, and to hold, use, maintain, lease, convey and exchange such property, in whole or in part, and to pledge the rents, issues and profits thereof in whole or in part. No property acquired by the board under this act shall be taxed by the state of Kansas, or by any county, municipal corporation, public corporation or political subdivision therein.

"(f) To borrow money to pay the cost of acquisition of one or more building sites and buildings, and to pay the cost of constructing, remodeling, re-

pairing and equipping one or more buildings, and to issue and sell bonds, debentures or other obligations of the board (hereinafter sometimes designated as securities) to be fully negotiable and to be secured by a pledge of, and payable solely from, the rents, issues and profits of all of the property of the board, or by a pledge of, and payable solely from the rents, issues and profits of the property acquired or constructed by the board, in whole or in part, with the proceeds of the borrowing transactions. Interest falling due within twenty-four months after the issuance and sale of any particular securities, or any series thereof, may be paid out of the proceeds of the sale thereof. Any securities may be issued in series, and if so issued, all series thereof issued under or secured by the same trust indenture or trust agreement, shall rank equally, without preference or priority of one series over another, whether by reason of the date of issue or negotiation thereof or date of maturity thereof or for any other reason. All such securities issued hereunder and the income derived therefrom are and shall be exempt from all state, county and municipal taxation in the state of Kansas, except inheritance taxes by the state of Kansas. All such securities shall be and are hereby declared to be legal and authorized investments for banks, savings banks, trust companies, building and loan associations, insurance companies, fiduciaries, trustees, guardians, and for all public funds of the state of Kansas, or any department, agency or institution thereof, and for the sinking funds of counties, municipal corporations, public corporations and political subdivisions of the state of Kansas. Such securities shall be eligible to secure the deposit of any and all public funds of the state of Kansas, and of any and all municipal corporations, counties, public corporations and political subdivisions of the state of Kansas, and such securities shall be lawful and sufficient security for such deposits to the extent of their par value when accompanied by all unmatured coupons appurtenant thereto. Such securities may be sold by the board in any manner it may determine, but in no event at a price so that the interest cost of the money received by the board from the sale thereof will exceed five percent per annum, computed to maturity according to standard tables of bond values. All such securities shall be signed by the chairman of the board, countersigned by the secretary-treasurer thereof and the corporate seal of the board shall be thereto affixed and all of the coupons shall be signed by the facsimile signature of the secretary-treasurer of the board. In case any officer of the board who shall have signed or countersigned any such security shall cease to be such officer before such security shall be issued by the board, such security may nevertheless be validly issued by the board. Such securities may be in such denomination or denominations, may be in such form, coupon or registered, may carry such registration and conversion privileges, may be payable at such place or places, and may be subject to such terms of redemption with or without premium as may be provided by resolution of the board.

"(g) From time to time to execute and deliver trust deeds and trust agreements where under any bank or trust company authorized by the laws of the state of Kansas or of the United States of America to accept and execute trusts in the state may be named and act as trustee. Any such trust deed or trust agreement shall be signed in the name and on behalf of the board by the

chairman of the board and countersigned by the secretary-treasurer thereof and the corporate seal of the board shall be thereto affixed; and any such trust deed or trust agreement may, if it names such bank or trust company to act as trustee, contain provisions for the deposit with the trustee thereunder and the disbursement by such trustee of the proceeds of the securities issued thereunder or secured thereby and/or the rents, issues and profits of all property acquired or constructed out of such proceeds and, whether or not such bank or trust company be named as trustee, may also contain such provisions for the protection and enforcement of the rights and remedies of the trustee and the holders of such securities as the board may approve, including provisions for the acceleration of maturity of any such securities upon default by the board in the performance or observance of any of the covenants or provisons of such securities or of the trust deed or trust agreement whereunder the same are issued or secured. Any such trust deed or trust agreement shall provide that all securities issued at any time thereunder shall be equally secured thereby but any such trust deed or trust agreement may contain and impose upon the board limitations and conditions governing the right of the board to issue additional securities.

"(h) In order to secure the payment of principal of and interest on such securities and to secure the proper application of the rents, issues and profits pledged thereto, the board is further authorized and empowered to execute and deliver leases demising and leasing to the state of Kansas through the adjutant general, who shall execute the same for the state, for such lawful term as may be determined by the board, any building or buildings and the equipment therein and the site or sites therefor, to be used for armory purposes and for no other purposes, and to renew such leases from time to time: *Provided, however,* That if at any time the state of Kansas shall fail or refuse to pay the rental reserved in any such lease, or shall fail or refuse to lease any such building and site, or to renew any existing lease thereon at the rental provided to be paid, then the board shall have the power to lease such building and equipment and the site therefor to any person or entity and upon such terms as the board may determine. Such leasing of such property may be done without notice or competitive bids. The annual rental, which may be made payable in such installments as the board shall determine, to be charged the state of Kansas for the use of such property leased to it by the board shall be sufficient to provide for the operation and maintenance of the property so leased, to pay the interest on the securities, if any, issued for the purpose of acquiring, constructing or equipping such property, to provide for the retirement of such securities, if any, and the payment of the expenses incident to the issuance thereof as well as the necessary and proper expenses of the board not otherwise provided for. (L. 1947, ch. 307, § 3; L. 1949, ch. 302, § 1; June 30.)

"Under no circumstances shall any security issued under the provisions of this act be or become an obligation or indebtedness of the state of Kansas or of any political subdivision or municipality thereof nor shall any such security be or become an indebtedness of the board within the purview of any constitutional limitation or provision, and it shall be plainly stated on the face of each such security that it does not constitute such an indebtedness or obligation but is payable solely from the rents, issues and profits as aforesaid. (L. 1947, ch. 307, § 4; April 16.)

"As and when all of the property owned by the board shall be fully paid for, free of all liens, and all debts and other obligations incurred in connection with the acquisition or construction of such property have been fully paid, and all securities issued hereunder have been fully paid and retired, the board shall donate, transfer and convey such property by appropriate instruments of transfer and conveyance to the state of Kansas, and such instruments of transfer shall be kept in the custody of the adjutant general's department. (L. 1947, ch. 307, § 5; April 16.)

"Before any securities authorized under the provisions of this act shall be delivered, the secretary-treasurer shall forward to the attorney general the securities and a certified copy of all proceedings adopted by the board in connection with the authorization of such securities. The secretary-treasurer shall also furnish the attorney general with any additional information he may require. It shall be the duty of the attorney general to examine such proceedings and securities in connection with the facts and the constitution and laws governing the issuance thereof, and if, as the result of such examination, he shall find that such securities have been authorized in conformity with the constitution and laws and that they are valid and binding obligations of the board in accordance with the terms thereof he shall so officially certify and shall endorse on each security his certificate of such examination and validity. No such security shall be issued without such approval and certification. (L. 1947, ch. 307, § 6; April 16.)

"That this act constitutes full and complete authority for the purposes set out therein, and no procedure or proceedings other than those required by this act shall be necessary for the performance of the provisions hereof. The powers conferred by this act shall be in addition and supplemental to and not in substitution for, and the limitations imposed by this act shall not affect, the powers conferred by any other law. The provisions of this act are severable, and if any provision, section, subsection, sentence, clause or phrase of this act, including, but not limited to, the provisions relating to any of the sources of revenues for payment of bonds authorized pursuant to this act, be for any reason held to be unconstitutional or otherwise invalid by any court of competent jurisdiction, such decision shall not affect the validity of the remaining portions of this act; and the legislature hereby declares that it would have passed this act and each provision, section, subsection, sentence, clause or phrase thereof irrespective of the fact that any one or more of the same shall be declared invalid. (L. 1947, ch. 307, § 7; April 16.)"

Article 11, sections 6 and 7 of the state constitution provide as follows:

"For the purpose of defraying extraordinary expenses and making public improvements, the state may contract public debts; but such debts shall never, in the aggregate, exceed one million dollars, except as hereinafter provided. Every such debt shall be authorized by law for some purpose specified therein; and the vote of a majority of all the members elected to each house, to be taken by the yeas and nays, shall be necessary to the passage of such law; and every such law shall provide for levying an annual tax sufficient to pay the annual interest of such debt, and the principal thereof, when it shall become due; and shall specifically appropriate the proceeds of such taxes to the pay-

ment of such principal and interest; and such appropriation shall not be replaced nor the taxes postponed or diminished, until the interest and principal of such debt shall have been wholly paid.

"No debt shall be contracted by the state except as herein provided, unless the proposed law for creating such debt shall first be submitted to a direct vote of the electors of the state at some general election; and if such proposed law shall be ratified by a majority of all the votes cast at such general election, then it shall be the duty of the legislature next after such election to enact such law and create such debt, subject to all the provisions and restrictions provided in the preceding section of this article."

The sections quoted above first create the Kansas Armory Board and provide that it shall be a body politic and corporate. They then confer power on it, amongst these being to sue and be sued, to enter into contracts, to employ and pay such agents, employees and counsel as it may deem necessary, to accept gifts of money or services, of any kind from any source, and to acquire sites, buildings, equipment and other property for armory purposes. The statute confers on the board power to borrow money to pay the cost of acquisition of one or more building sites and buildings and to pay the cost of constructing, remodeling, repairing and equipping one or more buildings and to issue or sell bonds to be secured by a pledge of and to be payable solely from rents, issues and profits of all the property of the board.

The statute further provides that all such securities and the income from them shall be exempt from state, county and municipal taxes, except inheritance taxes of the state. The board was given the power to rent the buildings to the state through the adjutant general to be used for armory purposes and no other and if at any time the state should fail to rent any building the board would have the power to rent to other persons and that under no circumstances should the bonds become an obligation of the state or any political subdivision thereof and the bonds should never become an indebtedness of the board and such must be stated on the face of the bond. The statute further provides that when the property should be fully paid for free of all liens and all debts and other obligations the board shall transfer the buildings to the state.

The plan outlined in the statute is that the armory board will sell bonds pledging the rents from armory buildings, will when the buildings are built rent them to the state through the adjutant general to be used as armories, will use the rent to pay the bonds, and when the bonds and other liens are paid will convey the buildings to the state.

Plaintiff argues first such plan violates article 11, sections 6 and 7 of the constitution. These two sections have been discussed heretofore. To support its position the state cites and quotes at length from *State, ex rel., v. Atherton,* 139 Kan. 197, 30 P. 2d 291. That case considered a bill which gave the Forestry, Fish and Game Commission authority to borrow money from the United States and provide for the repayment of it by allocating ten percent of the income of the fish and game commission. We held the act invalid.

We considered these sections of the constitution in *State, ex rel., v. State Highway Comm.,* 138 Kan. 913, 28 P. 2d 770. There the legislature had authorized the highway commission to borrow $17,-000,000 from the federal government and to issue to the federal government revenue anticipation warrants. The same argument was made as to the validity of that act, that is, that it violated the above sections of constitution. We said in answer to that argument:

"Second. The debts referred to in article 11, sections 5 and 6, *supra,* are debts to be paid by a general-property tax. This is clear from the reading of the sections. What the framers of our constitution were guarding against was the incurring of debts in excess of a million dollars payable by a general-property tax without the question having been submitted to and adopted by the people. They regarded property as the basis of taxation (Wyandotte Constitutional Convention, p. 334). They were not dealing with the question of obligations to be paid only by special tax, such as on motor vehicles or motor fuels, or from funds raised in some manner other than by general-property tax."

See, also, *State, ex rel., v. State Highway Comm.,* 139 Kan. 391, 32 P. 2d 493. The statute pursuant to which these bonds are to be issued provides clearly they shall never be an obligation of the state or of any subdivision thereof. The bonds themselves will contain a like provision and that they must be secured by and payable solely from the rents and profits of the buildings in question.

In *State, ex rel., v. Board of Regents,* 167 Kan. 587, 207 P. 2d 373, we considered a statute that authorized the board of regents to issue and sell dormitory revenue bonds without obligating the state in order to obtain money with which to build dormitories on campuses of designated schools of the state. The constitutionality of the act was challenged on the ground that it contravened article 11, sections 6 and 7 of our constitution. We pointed out that the bond clearly disclosed, just as the bonds we are considering did, that it was not and could not become an obligation of the state. We said further:

"In the second place, if the debt represented by the bond technically should

be designated as a debt of the state, which we think it cannot, it is nevertheless not a debt prohibited by the constitution. Debts, within the contemplation of constitutional provisions, are debts to be paid by a general propery tax and not from funds to be raised in some other manner."

As we remarked in *State, ex rel., v. Board of Regents*, supra:

"These bonds do not pledge the faith and credit of the state. They do precisely the contrary. The bondholder knows he may look only to the revenue and income from the building, or buildings, for payment."

It is true the revenue from the dormitory buildings was to come from the rent paid by students who used the buildings while the income from the armories is to come from rent to be paid by the state, we see no distinction, however, as far as the application of article 11, sections 6 and 7 are concerned. Under neither statute is the faith and credit of the state involved. These bonds, just as the dormitory bonds, are to be paid by other than a tax on any property.

To the same general effect is *Geboski v. Montana Armory Board*, 110 Mont. 487, 103 P. 2d 679; *Armory Board v. McGraw, Atty. Gen.*, 132 Tex. 613, 126 S. W. 2d 627; also *Loomis v. Keehn*, 411 Ill. 337, 80 N. E. 368; also *Greenhalgh, Aplnt., v. Woolworth et al.*, 361 Pa. 543, 64 Atl. 2d 659.

The state next argues that G. S. 1949, 48-315 to 48-321 are in violation of article 2, section 24 of the constitution of the state. That section provides as follows:

"No money shall be drawn from the treasury, except in pursuance of a specific appropriation made by law, and no appropriation shall be for a longer term than two years."

The state contends the legislation actually makes an appropriation for a longer term than two years. This argument is not good. The act specifically provides for the contingency which might arise should the legislature fail to make an appropriation to pay the rent provided in the lease. There is no pretense in the act that future legislatures are bound to make appropriations. Under the provisions of this act and the terms of the bonds, no party has any right to look to the other than the rental income of the buildings to pay these bonds.

The state next argues the armory board is not a separate entity or body politic. The argument is that if the armory board was actually a separate entity it could not be compelled to convey the buildings to the state once the bonds are paid.

This same argument was made in *Loomis v. Keehn,* supra. The statutes were substantially like ours. The court said:

"When all of the provisions of the statute enumerated above are analyzed it discloses that the legislature has created a corporation mainly for the purpose of building armories; that such armories may be leased to the State, and in the event of the nonpayment of rent by the State, may be leased to others for suitable purposes; and that such corporation may pledge its property, or income, to secure loans made by it. It is not perceived how the corporation becomes an arm of the State solely because it may lease property to the State."

This argument is dealt with in *State, ex rel., v. Board of Regents,* supra. There we said when speaking of a similar provision in that act:

"In order, however, for the legislature to extend exemptions beyond those expressly designated in the constitution, they must have a public purpose and be designed to promote the public welfare."

We there held:

"Property expressly exempt from taxation by the constitution cannot be taxed but the legislature is competent to exempt additional property from taxation if such exemption has a public purpose and is designed to advance the public welfare."

The above opinion demonstrates clearly that dormitories at colleges have a public purpose. Certainly National Guard armories have a public purpose. The National Guard is an important and well recognized element of our national defense. Provision was made for the militia in our constitution. Article 8, section 2, makes it the duty of the legislature to provide for its organization, equipment and discipline. The armory buildings provided for by this act are necessary for the carrying out of this mandate. (See *Geboski v. Montana Armory Board,* supra.) We see no reason why the writ should issue.

It will be denied.

HARVEY, C. J., dissents.