Mr. Ted D. Ayres General Counsel and Director of Governmental Relations Kansas Board of Regents 700 S.W. Harrison, Suite 1410 Topeka, Kansas 66603-3760
Dear Mr. Ayres:
As general counsel for the Kansas board of regents you have requested our opinion on the proposed Kansas development finance authority (hereafter, KDFA) revenue bond issue for the Kansas board of regents capital improvement project (hereafter, the project). The project and bonds would be authorized pursuant to existing statutory authorization provided by K.S.A. 74-8901 et seq., and pursuant to legislation in 1996 senate bill no. 552 (hereafter, SB 552).
Your specific concern is whether revenue bonds issued by KDFA, the debt service on which is to be paid by annual appropriations pursuant to subsections (c) through (f) of section 5 and section 26 of SB 552, would create a debt of the state of Kansas within the meaning of article 11, section 6 of the Kansas constitution. You request that our opinion be based upon the present version of SB 552, introduced into the committee on ways and means of the Kansas state senate on January 29, 1996, a copy of which you provided for our information.
Article 11, section 6 of the Kansas constitution states:
 "For the purpose of defraying extraordinary expenses and making public improvements, the state may contract public debts; but such debts shall never, in the aggregate, exceed one million dollars, except as hereinafter provided. Every such debt shall be authorized by law for some purpose specified therein, and the vote of a majority of all the members elected to each house, to be taken by the yeas and nays, shall be necessary to the passage of such law; and every such law shall provide for levying an annual tax sufficient to pay the annual interest of such debt, and the principal thereof, when it shall become due; and shall specifically appropriate the proceeds of such taxes to the payment of such principal and interest; and such appropriation shall not be repealed nor the taxes postponed or diminished, until the interest and principal of such debt shall have been wholly paid."
This section of the constitution has historically been interpreted by the Kansas Supreme Court to mean that the state may not contract or create public debt, except as specifically provided. State, ex rel., v. SchoolFund, 4 Kan. 261 (1868); Hicks v. Davis, 97 Kan. 312, 315 (1916), ("[n]o money shall be drawn from the treasury, except in pursuance of a specific appropriation made by law, and no appropriation shall be for a longer term than two years.") It is then essential to determine whether in fact SB 552 actually creates a "debt" that the state is obligated to pay.
The Kansas Supreme Court examined the question of what constitutes a state debt in State ex rel. Fatzer, Attorney General, v. Board ofRegents , 167 Kan. 587 (1949). In this case, the court was presented with a constitutional challenge to a plan by the board of regents to issue and sell revenue bonds to finance the construction of school dormitories at a state school. The principal and interest on the bonds was to be paid from revenues generated by the dormitories. The board of regents was acting pursuant to a legislative enactment which authorized the board to issue bonds for this purpose. As with the issue at hand, the court decided it was first necessary to determine whether the dormitory bonds constituted an indebtedness of the state. The court quoted the following language from section 4 of the challenged act:
 "Revenue bonds issued hereunder shall not be an indebtedness of the state of Kansas, or of the board of regents, or of the individual members of said board, and shall not constitute an indebtedness within the meaning of any constitutional or statutory limitation upon the incurring of indebtedness."
The court went on to note that the "endorsement on the bond plainly states the bond is a contract between the board and the holder thereof. The bond and the publication notice, in substance, clearly disclose the bond is not and shall not become, an obligation of the state. . . ." The court further stated that "in view of the act itself and the plain terms of the bond, a contract between the board and bond purchaser, we think no bondholder could logically contend the state, the college, the board or any official member or employee of the board becomes obligated to pay the indebtedness represented by the bond. The legislature by this act, as previously indicated, prohibited the state from incurring a debt under the act. The contract between the board and the bond purchaser is in express harmony with that statutory prohibition. Such an agreement between a creditor and debtor violates no rule of constitutional law."167 Kan. at 591.
The court in Board of Regents determined that because neither the authorizing legislation or the terms of the bond contract obligated the state to pay the indebtedness, that in fact no debt in violation of the constitution was created. The state's argument that dormitory revenues might prove insufficient to pay the bonds resulting in a judgment against the state as the only source of funds to satisfy the unpaid portion of debt was found by the court to be without merit. The court noted that the bonds were not and could not become a valid indebtedness of the state, citing its holding in State ex rel. Beck v. Kansas City,148 Kan. 623 (1938) and State ex rel. Beck v. Kansas City, 149 Kan. 252,257-258 (1939), that the statutory and contractual language limiting any liability of the general credit of the governmental entity issuing revenue bonds would be effective in protecting against such a judgment.167 Kan. at 591.
The Kansas Supreme Court revisited these issues in State ex rel.Fatzer, Atty. Gen. v. Armory Board et. al., 174 Kan. 369 (1953). InArmory Board, the court extended the reasoning in Board of Regents and held that bonds to be issued by the newly created Kansas armory board which would be secured and payable solely by the rents and profits of the buildings to be built with the bond proceeds, did not violate article 11, sections 6 and 7 of the constitution. The stated source of rental income and revenues from such buildings was to be a lease from the state which provided for annual payments of rent for the armory buildings contingent upon and subject to annual appropriations of the necessary funds by the legislature. Here again, the court placed significant emphasis on the legislative enactment which provided that the bonds would never be an obligation of the state, and to the corresponding limitation language in the bonds themselves. The court stated:
 "As we remarked in State ex rel. Fatzer v. Board of Regents, supra: these bonds do not pledge the faith and credit of the state. They do precisely the contrary. The bondholder knows he may look only to the revenue and income from the building, or buildings, for payment." 174 Kan. at 380.
As in prior decisions, the court in Armory Board relied heavily on the principle that debts prohibited within the meaning of article 11, sections 6 and 7 of the constitution are those "to be paid by a general property tax and not from funds to be raised in some other manner." 174 Kan at 380. The court distinguished Armory Board from Board of Regents noting that the underlying revenue source for the building rental was not rent paid by the students but rather from rent to be paid by the state stating that "we see no distinction, however, as far as the application of article 11, sections 6 and 7 are concerned. Under neither statute is the faith and credit of the state involved. These bonds, just as the dormitory bonds, are to be paid by other than a tax on property." 174 Kan. at 380.
This suggests that the court found it acceptable for the state to use whatever funds it had available from the general fund to make the rental payments. The court has consistently reiterated the principle that a debt within the meaning of article 11, sections 6 and 7 of the constitution is one required to be paid by a general property tax, backed by a full faith and credit pledge, rather than an obligation for which moneys perhaps originally derived by the state from property tax revenues are at some point tapped by the legislature for appropriations. In theory, once funds become available to the legislature for appropriation purposes, their provenance is no longer significant.
In fact, one can legitimately raise the question that when funds are available and subject to appropriation by the legislature at its discretion, whether it matters if the funds are directed to meet debt service on revenue bonds or, e.g., are paid directly to a contractor for building repairs. Assuming the funds are available for legislative appropriation, it should be within the legislature's power to appropriate or not appropriate, whichever it chooses. The key becomes, then, whether the legislature is entitled to appropriate such funds in the first place.
With these principles in mind we now turn our attention to the proposed scheme of finance for the capital improvement project. As discussed briefly, herein, the project would be financed by revenue bonds issued by KDFA pursuant to its authority under the provisions of K.S.A. 74-8901 etseq. The debt service on the revenue bonds would be paid from annual appropriations made by the legislature pursuant to subsections (c) through (f) of section 5, and section 26 of SB 552. Section 5(c) provides for an unlimited appropriation from a special revenue fund for the state board of regents for fiscal years 1997 through 2000:
 "The state board of regents is hereby authorized to transfer moneys from the comprehensive rehabilitation and repair fund of the state board of regents to any account or accounts of a comprehensive rehabilitation and repair fund of any state educational institution under the control and supervision of the state board of regents for expenditure by the institutions for one or more capital improvement projects for major remodeling and new construction approved by the state board of regents or for payment of debt service on revenue bonds issued to finance such projects. . . ."
Subsections (d) and (e) of section 5 of SB 552 provide for appropriations from the Kansas educational building fund to go to the regents for a specified period, and subsection (f) stipulates that the appropriations made in the foregoing sections are not subject to the provisions of K.S.A. 46-155.
Section 26 of SB 552 states:
 "On July 1, 1996, K.S.A. 76-6b02 is hereby amended to read as follows: 76-6b02.(a) All moneys received by the state treasurer under K.S.A. 76-6b01, and amendments thereto, shall be credited to the Kansas educational building fund to be appropriated by the legislature as needed for the construction, reconstruction, equipment and repair of buildings and grounds at the state educational institutions under the control and supervision of the state board of regents and for payment of debt service on revenue bonds issued to finance such projects.
 "(b) Subject to any restrictions imposed by appropriation acts, the state board of regents is authorized to pledge funds appropriated to it from the Kansas educational building fund for the payment of debt service on revenue bonds issued for the purposes set forth in subsection (a). Subject to any restrictions imposed by appropriation acts, the state board of regents is also authorized to pledge any funds appropriated to it from the Kansas educational building fund as a priority for the payment of debt service on such revenue bonds. Revenue bonds issued for the purposes set forth in subsection (a) shall not be considered a debt or obligation of the state for the purpose of section 6 of article 11 of the constitution of the state of Kansas." (Emphasis added.)
K.S.A. 76-6b01 provides for an annual permanent property tax levy for institutions of higher education. SB 552 in conjunction with K.S.A. 76-6b01 and 76-6b02, as amended, would in effect provide a finance structure whereby moneys received by the annual tax levy authorized in K.S.A. 76-6b01 would be credited to the educational building fund, then appropriated by the legislature as needed for debt service payments on any revenue bonds issued to finance the capital improvement projects.
The finance structure proposed in SB 552 contains both similarities and distinctions from the finance methods examined by the Kansas Supreme Court in the Board of Regents and Armory Board cases. The proposed financing is similar in the sense that like Regents and Armory the state is not the issuer of the bonds and makes no pledge of its faith and credit. The proposed financing is distinct, however, in that the identifiable underlying source of revenue to pay the indebtedness is, undeniably, a property tax. The issue becomes, therefore, whether the property tax utilized to support the debt is one prohibited by article 11, section 6 of the constitution.
The issue is an original one, not previously addressed by the Kansas Supreme Court. Based on the reasoning set forth in the Board of Regents
and Armory Board cases, however, we believe it probable that the court would determine that the finance structure does not create an impermissible debt as characterized in article 11, section 6. The court appears to place the greatest emphasis on the contractual provisions in the issuing documentation accompanying the debt. In both Board ofRegents and Armory Board, the court focused on the premise that so long as the state makes clear in the contractual agreements that it is not obligated to levy a property tax or make a pledge of the faith and credit to pay off debt, then no constitutional conflict could exist. In Armory
the court suggests that the source of funds identified by the legislature as subject to appropriation for debt service payments, which would presumably include moneys derived from property taxes, as well as any other available revenues, is within the legislature's discretion, so long as the state does not obligate itself to levy a property tax to support a debt obligation outside of constitutional parameters.
It is our belief that the court would use a similar rationale if presented with a challenge to the proposed project. While it is possible the court could determine that the proposed plan is unconstitutional because, pursuant to SB 552, the underlying source of revenue to be relied on for payment of much of the bond debt is a statewide property tax that will be allocated to the educational building fund and be subject to appropriation by the legislature to meet debt service requirements, the principles espoused in the court's previous decisions touching on these issues suggests otherwise. K.S.A. 76-6b01 and K.S.A.76-6b02 authorize the legislature to appropriate all moneys received in the educational building fund for capital improvements. Given the appropriation authority exists, it would appear that it is within the legislature's discretion to determine how they wish to utilize this authority. Payment of debt service would appear to be a legitimate exercise of the legislature's discretionary appropriation authority. The court's primary expressed principle in both Board of Regents and ArmoryBoard is that so long as the state does not obligate itself to levy a property tax or pledge its faith and credit to support a debt, then no conflict exists with article 11, section 6.
Based upon our analysis of the proposed legislation and applicable case law, we believe it is imperative to clarify that the state is in no way obligated to either levy a tax or appropriate funds to the project accounts to support debt service payments on any bonds. Neither the proposed legislation or the bond contractual provisions should be susceptible to any interpretation which suggests that the state is obligated to levy a property tax or pledge its faith and credit to pay off the bonds. We believe this is determinative.
The Supreme Court has not directly addressed the constitutional issues presented in the proposed bill. It is, however, our opinion that the cases cited herein provide the foundation upon which the answer to the present issue can be constructed. We thus conclude that should a challenge be raised to the proposed plan and financing arrangement, that assuming both the authorizing legislation and bond documentation comport with the guidelines set forth in its earlier decisions, that the court would adhere to the principles set forth in Regents and Armory Board, principally, that the terms of the contractual provisions control. To repeat the language of the court in Board of Regents:
 "The endorsement on the bond plainly states the bond is a contract between the board and the holder thereof. . . . In view of the act itself and the plain terms of the bond, a contract between the board and bond purchaser, we think no bondholder could logically contend the state, the college, the board, or any official member or employee of the board becomes obligated to pay the indebtedness represented by the bond. The legislature by this act, as previously indicated, prohibited the state from incurring a debt under the act. The contract between the board and the bond purchaser is in express harmony with that statutory prohibition. Such an agreement between a creditor and debtor violates no rule of constitutional law." State, ex rel. v. Board of Regents, 167 Kan. 587, 590 (1949).
So long as the authorizing legislation in SB 552 and the ensuing bond documents clearly convey to purchasers of the bonds that the bonds would never be an obligation of the state, we believe the court would determine that no conflict arises within the confines of article 11, section 6 of the constitution.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Rebecca E. Floyd Assistant Attorney General
CJS:JLM:REF:jm