13229

HADDON v. CHEATHAM, COUNTY TREASURER

(159 S. E., 843)

*Mr. William P. Greene,* for petitioner.

*Mr. J. Moore Mars,* for respondent.

August 20, 1931.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

This is a controversy without action, brought in the original jurisdiction of the Court to determine the validity of certain notes which it is alleged are about to be issued by the corporate authorities of the county of Abbeville upon the authority, it is claimed, of the provisions of an Act, No. 299, of the General Assembly approved April 22, 1931, 37 Statutes at Large, p. 482.

Upon the petition of W. C. Haddon an order was issued by his Honor, the Chief Justice, dated August 6, by which the respondents above named were restrained from selling the coupon notes referred to in the petition, and were re-

quired to show cause before the Supreme Court why the injunction should not be made perpetual.

The matter was heard by the Court at its special session held the 6th day of August, 1931, upon an agreed statement.

From this statement it appears that the county of Abbeville on the 8th day of April, 1930, issued its three notes aggregating the sum of $52,500.00, payable to the People's State Bank of South Carolina. To secure the payment of said sum and interest, the taxes of the county to be collected and applicable to claims, for the payment of which this money was borrowed, for the said fiscal year, were pledged to the payee, or order.

The Act of 1931, above referred to, authorizes and directs the treasurer and supervisor of Abbeville County to issue coupon notes of Abbeville County in the aggregate amount of not exceeding $50,000.00 for the purpose of refunding or paying past-due notes of Abbeville County now outstanding. For the payment of the notes and interest the Act authorized the pledging of the uncollected taxes for ordinary county purposes levied by Abbeville County for the years 1927, 1928, 1929, and 1930, in addition to the full faith and credit of the county.

The Act further provides that there shall be levied and collected annually upon all the taxable property of the county sufficient to pay the interest on, and create a sinking fund for the payment of, the said notes as they mature, respectively.

It appears from the agreed statement that the unpaid taxes paid the county, leaving a balance of $85,397.87 (figures should read $85,401.97). Since the passage of the Act there has been collected from the taxes due in 1927 the sum of $2,451.41, and the books for that year are closed. This amount is held for application to the coupon notes authorized by the Act, if they are issued. The county treasurer and the county supervisor have negotiated a sale of the notes aggregating $50,000.00, if they be issued. It is set out in

the agreed statement that: "It is expected with reason that with the cash already collected from 1927 taxes, there should be collected from the tax executions for the years 1928, 1929 and 1930, a sufficient amount to pay the coupon notes amounting to $50,000.00." It is further stated that the bonded indebtedness of Abbeville County already exceeds 8 per cent. of its taxable property.

The agreed statement apparently constitutes a return to the rule.

Counsel for petitioner and respondent agree that the two questions to be considered are these:

First. Will the coupon notes authorized by Act No. 299 approved April 22, 1931, if issued, constitute bonded indebtedness of Abbeville County within the meaning of Section 5, Article 10, of the Constitution of 1895?

Second. Do the notes issued by the county of Abbeville April 8, 1930, payable to People's State Bank of South Carolina, constitute bonded indebtedness of the county of Abbeville within the meaning of Section 5, Article 10, of the Constitution of 1895?

It is conceded by counsel that these questions are governed by the same principle. In our own opinion they are governed by the principle laid down in the cases of *Sullivan v. City of Charleston,* 133 S. C., 189, 133 S. E., 240; *Briggs v. Greenville County,* 137 S. C., 288, 135 S. E., 153, 158, and cases there cited; *Evans v. Beattie et al.,* 137 S. C., 496, 135 S. E., 538; and *Richards v. Moorer,* 152 S. C., 455, 150 S. E., 269.

Nowhere is the principle more clearly stated than in *Griggs v. Greenville County:* "This Court has held a number of times that obligations of the same character as these bonds, secured by the pledge of a fund which might reasonably be expected to be sufficient to meet the obligations without resorting to the levy of a property tax, did not constitute bonded debt within the meaning of the

constitutional limitations, notwithstanding that the full faith, credit, and taxing power of a political subdivision were pledged for the payment of the obligations"—citing *Lillard v. Melton,* 103 S. C., 10, 87 S. E., 421; *Brownlee v. Brock,* 107 S. C., 230, 92 S. E., 477; *McIntyre v. Rogers,* 123 S. C., 334, 116 S. E., 277; *Barnwell v. Matthews,* 132 S. C., 314, 128 S. E., 712; *Sullivan v. City Council of Charleston,* 133 S. C., 189, 133 S. E., 340.

This principle is especially affirmed in the case of *State ex rel. Richards v. Moorer,* 152 S. C., 455, 150 S. E., 269.

Counsel argues that this doctrine is modified by the holding of this Court in the case of *Thompson v. Christopher et al.,* 141 S. C., 95, 139 S. E., 178. We do not think so. In that case there was no pledge of a fund which might reasonably be expected to take care of the notes when they matured. On the contrary the fiscal officers of the county were authorized to levy a direct tax on the taxable property of the school district for that purpose.

It is the judgment of the Court that the petition be dismissed and that the restraining order heretofore granted be discharged.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES COTHRAN, STABLER, and CARTER concur.