21374

The CITY OF BEAUFORT, Respondent, v. John M. GRIFFIN, In-
dividually and representing the Residents, Property Owners and
Taxpayers of the City of Beaufort, Appellants.

(274 S. E. (2d) 301)

*Sherwood N. Fender, Carter & Fender,* Beaufort, *for appellants.*

*Guerard & Applegate, P. A.,* Charleston, *for respondent.*

January 14, 1981.

HARWELL, Justice:

This action was commenced by the City of Beaufort under the Uniform Declaratory Judgments Act, § 15-53-10, *et seq.,* Code of Laws of South Carolina (1976), to determine whether or not the City may proceed to issue $125,-000 in general obligation bonds without first holding an election on the issue.

Article X, Section 14 of the South Carolina Constitution defines and provides for the bonded indebtedness of political subdivisions in the State. The provisions applicable to this case provide in pertinent part as follows:

(2) The political subdivisions of the State shall have the power to incur bonded indebtedness in such manner and upon such terms and conditions as the General Assembly shall prescribe by general law within the limitations set forth in this section and Section 12 of this article.

Such political subdivisions shall have the power to incur indebtedness in the following categories and in no others:

(a) General obligation debt; and. . . .

(3) "General obligation debt" shall mean *any indebtedness* of the political subdivision which shall be *secured in whole or in part by a pledge of its full faith, credit and taxing power.*

. . . . .

(6) If general obligation debt be authorized by a majority vote of the qualified electors of the political subdivision voting in a referendum authorized by law, there shall be no conditions or restrictions limiting the incurring of such indebtedness **except:**

(a) those restrictions and limitations imposed in the authorization to incur such indebtedness;

(b) the provisions of subsection (4) hereof; and

(c) such general obligation debt shall be issues within five years of the date of such referendum.

(7) . . . . general obligation debt may also be incurred by the governing body of each political subdivision:

(a) For any of its corporate purposes in an amount not exceeding eight percent of the assessed value of all taxable property of such political subdivision; or . . .

In determining the debt limitations imposed by the provisions of subsection (7) of this section, bonded indebtedness incurred pursuant to the authorizations of subsection (6), bonded indebtedness existing on the date of this section becomes a part of the Constitution in 1977 . . . shall not be considered. [Emphasis added]

The general obligation debt aspect of bonded indebtedness, as illustrated by the emphasized language in Article X, Section 14, may thus be understood as indebtedness lawfully contracted for governmental purposes and ultimately secured by taxes on the property within the political entity. This definition is found also in prior case law treatment of the term. See, *Jackson v. Breeland,* 103 S. C. 184, 88 S. E. 128 (1916); *Thomson v. Christopher,* 141 S. C. 92, 139 S. E. 178 (1927); *Bolton v. Wharton,* 163 S. C. 242, 161 S. E. 454 (1931).

Article X, Section 14 provides generally that the political subdivision may incur general obligation debt if approved by the qualified electors within the subdivision. Subsection 7, however, gives the local political entity a limited method to incur general obligation debt without first submitting the issue for voter approval, as long as the debt thus assumed does not exceed eight percent of the assessed value of the taxable property within the entity. Once the indebtedness

accrued by means of this subsection reaches the eight percent exemption limit, any subsequently proposed general obligation debt must first be approved by the voters. But as noted in the quotation of the subsection above, the eight percent limitation does not include bonded indebtedness existing when Section 14 became a part of the Constitution. Therefore, the Subsection 7 eight percent limit is addressed to general obligation debt created after November 30, 1977, the date Section 14 became effective.[1]

The general issue raised in this appeal is whether the City of Beaufort may exclude and not consider certain outstanding general obligation refunding bonds issued in 1979 to refund debt in the principal amount of $439,900, which was outstanding on November 30, 1977. This debt was comprised of notes of $9,500 and $30,400 and a loan of $400,000 payable to the State Sinking Fund.

Since November 30, 1977, the City has incurred a total bonded indebtedness of $600,000. The assessed value of all taxable property in the City is $8,530,317. Eight percent of the assessed value is $682,410. As is readily apparent, the proposed $125,000 general obligation bonds may be issued without an election only if the City may exclude at least some portion of the general obligation refunding bonds from the eight percent limit in Subsection 7. The City argues that of the $600,000 indebtedness, $439,900 refunds pre-November 30, 1977 bonded indebtedness and therefore does not apply towards the eight percent limit. Appellant John M. Griffin, a city taxpayer, argues that all of the 1979 issue must count towards the limit.

The trial Court held that the three debts existent on November 30, 1977, constituted bonded indebtedness within the meaning of the constitutional provision and that the refunding of the debt would not apply towards the eight percent limit in Subsection 7 since refunded indebtedness merely evi-

---

[1] See, Act No. 71, §§ 2, 3, Statutes at Large of South Carolina (1977).

dences existing debts and does not increase aggregate indebtedness. Appellant originally excepted to both aspects of the holding below but has abandoned his exception to the ruling concerning the legal effect of debt refunding since, on submission of the case for review, he does not address the issue. We nonetheless find the trial judge's conclusion on this point to have been correct. The sole issue before us is whether the indebtedness existing on November 30, 1977, is bonded indebtedness within the meaning of Article X.

The trial court erred by treating all of the debt existing on November 30, 1977, as general obligation debt. Of the $439,900 only the $400,000 loan payable to the State Sinking Fund pledges the "general and full faith, credit and taxing power" of the City for the indebtedness. The other two debts do not pledge the full faith, credit and taxing power and therefore are clearly not general obligation debts as defined by Article X, Section 14, Subsection 3.

We therefore affirm so much of the decision below finding the State Sinking Fund loan to be a general obligation debt, or bonded indebtedness, existing on November 30, 1977, and not included under the eight percent limitation. We must reverse as to that portion of the decision which likewise treated the two notes existing on November 30, 1977, as general obligation debts. The refunding mechanism would not act to transform ordinary debt into general obligation debt *prior* to the refunding. Despite this partial reversal, the proposed bond issuance will now easily fall within the eight percent cutoff. The City may proceed to issue the proposed general obligation bonds without an election.

Affirmed in part and reversed in part.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.