22917

Marvin P. CADDELL, Respondents v. LEXINGTON COUNTY SCHOOL DISTRICT NO. 1, Michael Wingard, Randall J. Price, Michael Shealy, L. L. Lewis, Mrs. Swannee Reenstjerna, James A. Compton and Robert H. Waddle, in their official capacity as members of the Board of Trustees of Lexington County School District No. 1, Appellants.

(373 S. E. (2d) 598)

Supreme Court

*Margaret C. Pope, Robert S. Galloway, III, Belton T. Zeigler* and *William L. Hirata, of Sinkler & Boyd, P.A., Kenneth L. Childs* and *David T. Duff, of Childs, Duff, St. Pierre & Hardin, P.A.,* Columbia, *for appellants.*

*Patrick J. Frawley* and *Jeff M. Anderson, Bouknight, Nicholson, Davis, Frawley & Anderson,* Lexington, *for respondent.*

*Roy D. Bates,* Columbia, *amicus curiae, for Municipal Ass'n of South Carolina.*

*O. Wayne Corley* and *Kathleen Crum McKinney,* Columbia, *amicus curiae, for S. C. Ass'n of School Superintendents.*

*Robert E. Lyon, Jr., Hardwick Stuart, Jr., J., Craig Bower* and *Russell B. Shetterly,* Columbia, *amicus curiae, for S. C. Ass'n of Counties.*

*Richard W. Riley, Brenton D. Jeffcoat, Arthur L. Coleman John S. Egan,* and *Elizabeth F. Warren,* Columbia, *amicus curiae, for S. C. School Bds. Ass'n.*

*McNair Law Firm, P.A.,* Columbia, *amicus curiae, for Cranston/Prescott, etc.*

Heard June 7, 1988.

Decided Oct. 24, 1988.

CHANDLER, Justice:

In a Declaratory Judgment action the Circuit Court held unconstitutional certain lease/purchase agreements entered into by Lexington County School District No. 1 (District) for

construction and renovation of public school buildings. The Court reasoned that the agreements constitute *general obligation debt* in violation of Article X, § 15 of the State Constitution.

We reverse.

## FACTS

All parties agree that burgeoning pupil enrollment in the District has created a pressing need for construction of additional school buildings as well as renovation of existing facilities.

After voters on three occasions rejected referenda authorizing bonded indebtedness in excess of the 8% limit in Article X, § 15, the District's Board of Trustees adopted an alternative method of funding, known in the marketplace as lease/purchasing.

Under the specific plan proposed here, land and school buildings to be renovated would be leased by the District to a nonprofit corporation (Corporation) for a term of thirty years. The Corporation would sell Certificates of Participation (Certificates) to investors to provide the necessary financing. The new and renovated structures would then be leased back to the District under an agreement providing for year-to-year rental. Rent payments are set at an amount sufficient to pay the principal and interest due under the Certificates.

Critical to this leaseback arrangement is a provision known as the "non-appropriation clause," under which the District may decline, without penalty, to renew the annual lease by failing or refusing to appropriate the necessary funds.

## ISSUE

The sole issue we address is whether the lease/purchase agreements constitute debt as that term is used in Article X, § 15.

## DISCUSSION

The limitations placed upon school districts by Article X, § 15, apply only to general obligation debt, defined in subsection (2) as "any indebtedness of the school district which

shall be secured in whole or in part by a pledge of its full faith, credit and taxing power." In its historical context, general obligation debt refers to that which is "ultimately secured by taxes on the property within the political entity."[1]

Thus, general obligation debt embraces neither yearly expenses payable from current revenues nor contingent liabilities of the governmental entity.[2] This is so because the governmental entity is not obligated to impose property taxes for their payment.[3]

Similarly, a leaseback arrangement containing an explicit non-appropriation clause places no such requirement on the political entity. Under the plan here, rental payments are to be included in the District's annual budget. Liability under the leaseback agreement is, at most, contingent: The District has the option of terminating simply by refusing to appropriate money for rent.

We hold that the lease/purchase agreements do not constitute debt under Article X, § 15, of the Constitution. Our holding accords with the overwhelming majority of jurisdictions.[4]

---

[1] *City of Beaufort v. Griffin*, 275 S. C. 603, 605, 274 S. E. (2d) 301, 303 (1981).

[2] *United States Rubber Products, Inc. v. Town of Batesburg*, 183 S. C. 49, 190 S. E. 120 (1937); *Luther v. Wheeler*, 73 S. C. 83, 52 S. E. 874 (1905); *Bradley v. City Council of Greenville*, 212 S. C. 389, 46 S. E. (2d) 291 (1948); *Lillard v. Melton*, 103 S. C. 10, 87 S. E. 421 (1915).

[3] *See Carll v. South Carolina Jobs-Economic Dev. Auth.*, 284 S. C. 438, 327 S. E. (2d) 331 (1985); *see also Nichols v. South Carolina Research Auth.*, 290 S. C. 415, 351 S. E. (2d) 155 (1986).

[4] *Opinion of the Justices No. 183*, 278 Ala. 298, 178 So. (2d) 76 (1965); *Gude v. City of Lakewood*, 636 P. (2d) 691 (Colo. 1981); *Cochran v. Mayor of Middletown*, 14 Del. Ch. 295, 125 A. 459 (1924); *Berger v. Howlett*, 25 Ill. (2d) 128, 182 N. E. (2d) 673 (1962); *Steup v. Indiana Housing Fin. Auth.* 273 Ind. 72, 402 N. E. (2d) 1215 (1980); *State ex rel. Fatzer v. Armory Bd.*, 174 Kan. 369, 256 P. (2d) 143 (1953); *Davis v. Board of Education of Newport*, 260 Ky. 294, 83 S. W. (2d) 34 (Ct. App. 1935); *Edgerly v. Honeywell Information Systems, Inc.*, 377 A. 2d 104 (Me. 1977); *St. Charles City-County Library Dist. v. St. Charles Library Bldg. Corp.*, 627 S. W. (2d) 64 (Mo. App. 1981); *Ruge v. State*, 201 Neb. 391, 267 N. W. (2d) 748 (1978); *Enourato v. New Jersey Bldg. Auth.*, 90 N. J. 396, 448 A. (2d) 449 (1982); *Halstead v. McHendry*, 566 P. (2d) 134 (Okla. 1977); *McFarland v. Barron*, 83 S. D. 639, 164 N. W. (2d) 607 (1969); *Texas Pub. Bldg. Auth. v. Mattox*, 686 S. W. (2d) 924 (Tex. 1985); *Municipal Bldg. Auth. v. Lowder*, 711 P. (2d) 273 (Utah 1985); *Baliles v. Mazur*, 224 Va. 462, 297 S. E. (2d) 695 (1982); *State ex rel. W. Va. Resource Recovery—Solid Waste Disposal Auth. v. Gill*, 323 S. E. (2d) 590 (W. Va.

Caddell maintains that, because the District would temporarily lose the use of its property upon an election not to renew, the lease/purchase agreements constitute pledges of the District's credit. We disagree.

We rejected a similar contention in *Nichols v. South Carolina Research Authority, supra.* In *Nichols*, the Budget and Control Board deeded 1500 acres of State-owned property to the Authority. The Authority, in turn, sought to mortgage the acreage to secure obligations of privately owned firms locating in its industrial parks. Notwithstanding that the property could be permanently lost upon a business failure, we held that the mortgage, which covered a known and quantifiable asset only, was not a pledge of the State's credit in that it imposed no potential taxpayer liability.

Likewise, the District's lease of land and school buildings to the Corporation imposes no potential taxpayer liability. Indeed, the potential detriment to the District is less than that created by the mortgage in *Nichols*. Here, the ownership of the land and buildings could never be impaired by an election not to renew; at most, the use of the property would be lost for a limited period of time.

Caddell further suggests that the agreements are a subterfuge to enable the District to construct needed facilities without contravening constitutional debt limitations. The identical argument was rejected by the Supreme Court of Colorado, which upheld the financing of a city hall through a lease/purchase agreement containing a non-appropriation clause. The following statement from that decision is pertinent here:

> The premise of the plaintiffs' argument that the plan for financing and construction of a city hall is a fraud or works an injustice upon the city's taxpayers is that it is a device to accomplish, by change of form with no change of substance, the same result which has been rejected by the voters. This premise is faulty. *It is not the construction of a city hall for which voter approval is required under Colo. Const. Art. XI, § 6. Rather, it is*

1984); *State ex rel. Thomson v. Giessel,* 271 Wis. 15, 72 N. W. (2d) 577 (1955). *Contra State ex rel. Nevada Bldg. Auth. v. Hancock,* 86 Nev. 310, 468 P. (2d) 333 (1970); *McKinley v. Alamogordo Mun. School Dist. Auth.,* 81 N. M. 196, 465 P. (2d) 79 (1969).

*the creation of a general obligation debt of the city which requires the assent of the voters.* The plan submitted to and rejected by the voters would have created such a general obligation debt. The plan now proposed does not. This difference is constitutionally significant. [Emphasis supplied].[5]

The concerns expressed in both the dissent and the Order of the Circuit Court are matters of policy and must be addressed, if at all, through constitutional amendment or legislative proscription. At present, nothing in either the South Carolina Constitution or the South Carolina Code of Laws inhibits the adoption of the financing agreements at issue in this litigation.

Accordingly, the judgment of the Circuit Court is reversed.

Reversed.

GREGORY, C. J., and HARWELL and TOAL, JJ., concur.

FINNEY, J., dissenting in separate opinion.

FINNEY, Justice:

I dissent. It is my judgment that the lease agreements between the School District and the Corporation incur a general obligation debt and violate Article X, Section 15, of the South Carolina Constitution.

This case presents the problem of reconciling constitutional debt limitations on local governments with the constitutional mandate for local governments to provide educational facilities which meet certain minimum standards. Appellants assert that because of the structure of this "lease/purchase arrangement," there is no violation of the constitutional prohibition contained in Article X, Section 15. On the other hand, respondent contends that providing these new facilities by the method proposed would result in exceeding the District's constitutional eight percent debt limitation.

In order not to contravene the state's constitutional debt limitation provision and yet acquire the necessary capital to

---

[5] *Gude v. City of Lakewood, supra* at 697.

provide new school facilities, the District proposes to lease land and existing school facilities (Base Leases) to a private Corporation for a maximum period of thirty years for one dollar per year. In turn, the Corporation will construct new facilities or renovate existing facilities on the leased property and lease these facilities (Project Leases) to the District. The Project Leases are annual leases containing a non-appropriation clause under which the District may decline, without monetary penalty, to renew the leases. Upon a failure to renew the Project Leases, the District would lose the beneficial use of property acquired through the exercise of its taxing power and be entitled to compensation of only one dollar per year for the period remaining under the Base Leases.

Because of the agreement's non-appropriation clause, the majority concludes that the lease agreements do not constitute debt as set forth in Article X, Section 15. To follow the majority's reasoning, the inclusion of a non-appropriation provision in a lease agreement would be determinative of whether the agreement constituted an annual operational obligation or a general debt. In my view, the test should be whether the indebtedness of the school district is "secured in whole or in part by a pledge of its full faith, credit and taxing power." *City of Beaufort v. Griffin*, 275 S. C. 603, 605, 274 S. E. (2d) 301, 303 (1981). Applying this test and examining the monetary realities of these lease arrangements conclusively show that the indebtedness is secured *in part* by the school district's property, which was acquired by its taxing powers.

Therefore, the leases are a general obligation debt for the period of the Project Leases. Should the district invoke the non-appropriation clause and decline to renew the annual Project Leases, the District may be guilty of misappropriating governmental property.[1] Thus, I believe the leases violate the letter and the spirit of Article X, Section 15.

To the extent that the majority relies on *Nichols v. South Carolina Research Authority*, 290 S. C. 415, 351 S. E. (2d) 155 (1986), to support its conclusion, I believe they misinterpret

---

[1] The sole benefit of one dollar annual rental which the District would receive from the corporation during the term of the Base Lease would be grossly inadequate consideration for the value of the property leased.

its holding. By narrowly focusing on the potential imposition of taxes to finance a project as the sole indicator of a general obligation debt, the majority misinterprets *Nichols*, as well as Article X, Section 15. The majority rationalizes its decision, not to address the pledge of credit issue on the basis of no potential tax liability. I disagree with so much of the majority's opinion as indicates that there must be an invocation of the taxing powers in order for a debt to be classified as a general obligation. *See Nichols v. South Carolina Research Authority,* 351, S. E. (2d) at 157-8.

Article X, Section 15, states that a debt secured in whole or in part by pledge of a political entity's full faith, credit and taxing power is a general obligation debt. In my opinion, the words "in whole or *in part*" signify that the full faith, credit and taxing powers may be proven either individually or collectively in order for a debt to be characterized as a general obligation debt.

Furthermore, my assessment of the cases cited by the majority in support of their conclusion indicates that those cases are distinguishable from this case in that there was (1) an actual purchase then a leaseback; (2) a public corporation rather than a private corporation became the leaser of the governmental property; or (3) there was a lease with an option to purchase.

Nothing in this dissent should be construed as intimating that lease-purchase agreements[2] may not be used as a method to acquire needed public resources and avoid exceeding constitutional debt restrictions or limitations. Rather, my contention is that the subject lease agreements are prohibited because they use taxpayers' property as security and involve a pledge of credit. Further, the non-appropriation provision is an attempt to protect the arrangement from constitutional challenges. *State ex rel. Nevada Bldg. Auth. v. Hancock,* 86 Nev. 310, 468 P. (2d) 333 (1970.) *But cf., Gude v. City of Lakewood,* 636 P. (2d) 691 (Colo. S. Ct. 1981); *Dean v. Kuchel,* 35 Cal. (2d) 444, 218 P. (2d) 521 (1950). The District's property is, in essence, being used as credit or collateral by the private corporation in order to fund building and renovation projects and attract investors. I believe this is clearly

---

[2] The agreement with which we are concerned would be more appropriately designated as a lease-leaseback agreement.

a constitutionally impermissible use of governmental property. *See* South Carolina Constitution, Article X, § 11. *See also City of Beaufort v. Griffin, supra.*

The lease agreements are a subterfuge to enable the District and the Corporation to evade the District's constitutional debt limitations, which were provided generally to protect the public. *E.g., State ex rel. West Virginia Resource Recovery—Solid Waste Disposal Authority v. Gill,* 323 S. E. (2d) 590 (W. Va. S. Ct. of Appeals 1984). Certainly the need to provide facilities determined necessary to educate our youth cannot be overstated. However, no matter how worthy the endeavor, contravening the constitution cannot be justified. The cold economic realities of the rising cost of education and revenue shortfalls are not sufficient reasons to overlook this obvious debt limitation violation. In my opinion, the crisis in this educational system should be remedied by a constitutional amendment or a vote of the people. Thus, I would affirm the decision of the trial court.