23868

Nancy Jane DAVENPORT, Gary Dwight Dye, Vera H. Pursley, Martha R. Rast, Steven D. Rast, Sr., Enid Christine Ray, and Rook H. Sturgis, Plaintiffs v. CITY OF ROCK HILL, Defendant.

(432 S.E. (2d) 451)

Supreme Court

*A. Camden Lewis* and *William R. Calhoun, Jr.*, both of *Lewis, Babcock & Hawkins*, Columbia, *for plaintiffs.*

*Jane W. Trinkley, Daniel R. McLeod, Jr.*, and *M. William Youngblood*, all of *McNair Law Firm, P.A.*, Columbia, and *Emil W. Wald* and *James W. Sheedy*, both of *Spencer & Spencer, P.A.*, Rock Hill, *for defendant.*

*Elizabeth F. Warren*, Columbia, *for amicus curiae South Carolina School Boards Ass'n.*

*Roy D. Bates*, Columbia, *for amicus curiae Mun. Ass'n of South Carolina.*

*Robert E. Lyon, Jr.* and *Mark W. Tollison*, Columbia, *for amicus curiae South Carolina Ass'n of Counties.*

Heard May 3, 1993.

Decided June 7, 1993.

FINNEY, Associate Justice:

This proceeding is brought within the original jurisdiction of the Supreme Court due to the significant public interest involved. *See Key v. Currie*, 305 S.C. 115, 406 S.E. (2d) 356 (1991). We deny relief.

The city council (council) of Rock Hill (City) adopted a tax ordinance effective January 1, 1992, which provided that the council was empowered at any time in 1992 to authorize the issuance of tax anticipation notes (TANS) pursuant to S.C. Const. art. X, § 14 and S.C. Code Ann. § 11-27-40 (1986). On July 1992, the City issued TANS[1] in the amount of $3 million. The issuance and sale of $6.4 million in general obligation bonds pursuant to S.C. Const. art. X, § 14 were authorized on August 24, 1992, thereby creating the potential for $9.4 million in general obligation debt. Plaintiffs alleged that issuing the August 24 bond authorization would place the City above the limit of general obligation debt it could constitutionally

---

[1]Tax anticipation notes are short-term obligations issued during a fiscal year in anticipation of taxes already levied but not collected.

incur. On January 13, 1993 the City requested that this Court entertain this matter in its original jurisdiction.

Plaintiffs now argue that TANS are subject to the eight percent debt limitation imposed on other general obligation debt as prescribed by S.C. Const. art. X, § 14(7)(a).

S.C. Const. art. X, § 14 states in relevant part:

(2) The political subdivisions shall have the power to incur bonded indebtedness . . . in the following categories and in no others:

(a) General obligation debt; and

(b) Indebtedness payable only from a revenue-producing project or from a special source.

(3) "General obligation debt" shall mean any indebtedness of the political subdivision which shall be secured in whole or in part by a pledge of its full faith, credit and taxing power.

(4) General obligation debt may be incurred only for a purpose which is a public purpose and which is a corporate purpose of the applicable political subdivision.

(6) If general obligation debt be authorized by a majority vote of the qualified electors of the political subdivision voting in a referendum authorized by law, there shall be no conditions or restrictions limiting the incurring of such indebtedness except:

(a) those restrictions and limitations imposed in the authorization to incur such indebtedness;

(b) the provisions of subsection (4) hereof; and

(c) such general obligation debt shall be issued within five years of the date of such referendum.

(7) General obligation debt may *also* be incurred by the governing body of each political subdivision:

(a) For any of its corporate purposes in an amount not exceeding eight percent of the assessed value of all taxable property of such political subdivision; or

(b) General obligation debt incurred pursuant to and within the limitations prescribed by Section 12 of this article.

(8) General obligation debt may *also* be incurred in anticipation in the collection of ad valorem taxes or licenses (tax anticipation notes) . . . Such tax anticipation notes

shall be secured by a pledge of such taxes or license fees and a pledge of the full faith, credit nd taxing power of the political subdivision. All tax anticipation notes shall be expressed to mature not later than ninety days from the date as of which such taxes or license fees may be paid without penalty.

(9) General obligation notes may *also* be issued in anticipation of the proceeds of general obligation bonds which may be lawfully issued (bond anticipation notes).

Plaintiffs maintain that general obligation debt may only be incurred in two ways: 1) by majority vote of electors by referendum [subsection (6)]; and 2) by the governing body of a political subdivision, provided that the amount does not exceed the 8 percent limitation [subsection (7)]. We disagree.

It is apparent that TANS are secured by a political subdivision by a pledge of its full faith, credit and taxing power, and as such are general obligation debt as defined by subsection (3) of section 14. Moreover, subsection (8), which authorizes TANS to be issued by the governing body without a referendum specifically designates them as general obligation debt.

In our view, plaintiffs' construction of section 14 ignores the plain language of the section. The repeated use of the word "also" in subsections (7), (8), and (9) implies at the very least that each subsection authorizes additional types of general obligation debt. The word "also" means "in addition" or "besides," and indicates something additional. *Doyle v. Doyle*, 273 S.C. 398, 256 S.E. (2d) 862 (1979). Section 14 is also devoid of any language which specifically ties TANS to the 8 percent limitation of subsection (7). More importantly, if all general obligation debt were to be included in the 8 percent limitation, there would be no need to include subsections (8) or (9) in section 14. This Court is bound to presume that the framers of the constitution had some purpose in inserting every clause and every word contained in the document. It is never to be supposed that a single word was inserted in the law of this state without the intention of thereby conveying some meaning. *Ravenel v. Dekle*, 265 S.C. 364, 218 S.E. (2d) 521 (1975).

We find that all general obligation debt is not subject to the 8 percent limitation, and that subsection (8) is not superfluous. For subsection (8) to have meaning, it must be treated as an additional method of incurring debt.

Plaintiffs also argue that TANS must be restricted by the 8 percent limitation, so that political subdivisions will not abuse the process of issuing TANS. Although TANS are not subject to the 8 percent limitation, by their nature they are limited by the amount of taxes levied during a particular fiscal year. S.C. Code Ann. § 5-7-30 (Supp. 1992) authorizes a municipality to borrow in anticipation of taxes. S.C. Code Ann. § 11-27-40(5) (1986) and section 14(8) both provide that such notes must mature no later than ninety days after the due date of the taxes anticipated. This limitation effectively restricts the notes to repayment out of taxes levied for the current fiscal year.

TANS have been exempted historically from debt limits. TANS were held specifically not to constitute debt within the meaning of the constitutional limitation provisions then relevant in *City of Georgetown v. Elliott,* 95 F. (2d) 774 (4th Cir. 1938), and *Haddon v. Cheatham,* 161 S.C. 384, 159 S.E. 843 (1931). *See also* S.C. Att'y Gen. Op. of Dec. 18, 1992, O.S.-5017. In *Caddell v. Lexington County School District No. 1,* 296 S.C. 397, 373 S.E. (2d) 598 (1988),[2] this Court held that the 8 percent limitation placed upon school districts by S.C. Const. art. X, § 15 did not include yearly expenses payable from current revenues because the governmental entity is not obligated to impose property taxes for their payment. We conclude that not only are TANS payable from current revenues and limited to the current fiscal year, but the source of payment is provided prior to their issuance.

The plain language of section 14 as well as a historical understanding of TANS and their use in this State guides us to the conclusion that the language of S.C. Const. art. X, § 14 allows for TANS and similar general obligation debt to be incurred without application of the 8 percent limitation of subsection (7)(a). For the foregoing reasons, the relief sought by plaintiffs is denied.

---

[2]*Caddell* discusses general obligation debt in a sweeping manner, but does not define or delineate between different types of general obligation debt with specificity.

Relief denied.

HARWELL, C.J., and CHANDLER, TOAL and MOORE, JJ., concur.