24084

Hampton C. REDMOND, Jr.; Wayne R. Saylor; O.M. Shealy; Leon J. Dasher; Iva J. Taylor; Bennie C. Gilbert; Glenn K. Stabler; Jerry L. Smith; W. Bennett Jeffcoat; Tommy R. Craft; Dennis D. Danquist; Blanchard Poole; Walter R. Cassidy; Allen D. Culler; William A. Chavis; Gene A. Jeffcoat; Grady McIver; Alfonso Walker; Effie L. Sutton; Henry Sutton; Narva Lee Williams; Paul Smith; Grady Hoffman; Johnie McKnight; Bill King; Linda King; Lawrence H. Livingston, Jr.; Phillip Lee Shealy; David Strickland; Thelma E. Culler; John Culler; and Suzette R. Culler, individually and for the benefit and on behalf of all others similarly situate, Appellants v. LEXINGTON COUNTY SCHOOL DISTRICT NO. FOUR; Splawn R. Davis; Jean C. Goodwin; Jefford Hart, Jr.; Edward G. Joseph; Danny Peagler; Robbie Lee Stabler; and Wendell Stabler, in their official capacities as Members of the Board of Trustees of Lexington County School District No. Four, Respondents.

(445 S.E. (2d) 441)

Supreme Court

*Kay F. Paschal,* West Columbia, *for appellants.*

*Kenneth L. Childs, David E. Dubberly,* and *Allen D. Smith, Childs & Duff, P.A.,* Columbia, *for respondents.*

Heard March 1, 1994.

Decided June 6, 1994.

TOAL, Justice:

This is an appeal of the trial court's grant of the Defendants Lexington County School District No. 4 and members of the Board of Trustees' motion to dismiss the Plaintiffs' complaint for failure to state a cause of action under Rule 12(b)(6), SCRCP. We AFFIRM.

## FACTS

The Plaintiffs, property owners in Lexington County School District No. 4 (District), filed a class-action suit against the District and the members of the Board of Trustees (Board) to prohibit the Board from entering into a lease-purchase agreement to build a new middle school.

The Board approved the lease-purchase agreement after a bond referendum was defeated by the electors of the District. The bond referendum was necessary to authorize bonded indebtedness in excess of the 8% limit of Article X, § 15 of the South Carolina Constitution. The Plaintiffs allege the Board's decision to approve the lease-purchase method in effect nullified the vote of the electors of the District, and constituted an abuse of discretion.

The Plaintiffs additionally allege that the Board has not made necessary repairs to existing schools in the District, and that such repairs are ministerial, not discretionary duties mandated by S.C. Code Ann. § 59-19-90 (1990) and 24 S.C. Code Ann. Regs. § 43-180 (1992).

The Plaintiffs prayed for the following remedies: 1) a temporary injunction to prohibit the Defendants from entering into the lease-purchase agreement until such time as the tax base was adequate, and 2) a writ of mandamus to compel the Board to repair and renovate existing schools, including one school which had been closed due to structural defects.

## LAW/ANALYSIS

In *Caddell v. Lexington County School District No. 1*, 296 S.C. 397, 373 S.E. (2d) 598 (1988), this Court held that lease-purchase agreements do not constitute debt as that term is used in the South Carolina Constitution. Article X, § 15 of the South Carolina Constitution provides that voter approval is needed before any school district may incur general obligation debt in an amount in excess of 8% of the assessed value of all taxable property of such school district.

The Plaintiffs attempt to distinguish this case on the basis that although entering into such an agreement would not violate Article X, § 15, it would constitute an abuse of discretion. The Plaintiffs allege that 1) the tax base is not sufficient to support such an expansion, 2) existing schools have not been maintained due to a shortage of funds, 3) there is a possibility of a tax reassessment of a major corporate landholder in the District, and 4) the proposed site of the new school contains environmental hazards that would pose a risk to students.

In *Caddell*, the voters had on three occasions rejected referenda to authorize bonded indebtedness. The Plaintiffs argue that such a course would in effect nullify the vote of the electors of the District. As this Court pointed out in *Caddell*, however, "It is not the construction ... for which voter approval is required ... [r]ather, it is the creation of a general obligation debt ... which requires the assent of the voters." *Caddell* at 401-02, 373 S.E. (2d) at 600 (citing *Gude v. City of Lakewood*, 636 P. (2d) 691, 697 (Colo. 1981)). Since lease-purchase agreements have not been designated general obligation debt by the legislature, voter approval is not required.

As Justice Finney recognized in his dissent in *Caddell*, the use of lease-purchase agreements in these circumstances appears to allow school districts to circumvent the spirit of the constitutional limitation on general obligation debt. But as we were constrained to conclude in *Caddell*, the legislature has not provided a similar limitation on lease-purchase agreements. However, it is apparent some members of the legislature are finding this resulting incongruity of concern, as evidenced by the South Carolina Senate's recent passage of a bill which would require the amount expended for lease-purchase agreements to be counted towards the constitutional limita-

tion on general obligation debt.[1] If this bill is eventually passed by the House and signed by the Governor, the Defendants' position will obviously not merit the same result reached in *Caddell* and in this case. Until the legislature has definitively spoken on this issue, however, we must apply the law as it currently exists.

South Carolina law provides that each school district shall be under the management and control of the board of trustees, subject to the supervision of the county board of education. S.C. Code Ann. § 59-19-10 (1990). Section 59-19-90, in particular sub-parts (1), (5), (7), and (9), provides the general powers and duties of the board of trustees as follows:

> (1) *Provide schoolhouses.* Provide suitable schoolhouses in its district and make them comfortable, paying due regard to any schoolhouse already built or site procured, as well as to all other circumstances proper to be considered so as best to promote the educational interest of the districts;
>
> \* \* \* \* \*
>
> (5) *Control school property.* Take care of, manage, and control the school property of the district;
>
> \* \* \* \* \*
>
> (7) *Control educational interest of district.* Manage and control local educational interests of its district, with the exclusive authority to operate or not to operate any public school or schools;
>
> \* \* \* \* \*
>
> (9) *Transfer and assign pupils.* Transfer any pupil from one school to another so as to promote the best interests of education, and determine the school within its district in which any pupil shall enroll. . . .

In *Gamble v. Williamsburg County School District*, 305 S.C. 288, 408 S.E. (2d) 217 (1991), this Court held that the standard of review in determining whether the Board properly exercised its discretion under § 59-19-90 is whether the

---

[1] S. 226, proposing the addition of new § 11-27-110, was passed by the South Carolina Senate on March 31, 1994.

action measures up to any fair test of reason, and that a clear abuse of discretion is required to justify judicial interference. *Id.* at 290, 408 S.E. (2d) at 218. At issue in *Gamble* was whether the Board abused its discretion in closing a school. The Court held the only evidence of a disadvantage to students was that some students would have to travel farther. The Court held this was not an abuse of discretion and was within the Board's power under § 59-19-90.

Similarly, the South Carolina Court of Appeals stated in *Singleton v. Horry County School District*, 289 S.C. 223, 345 S.E. (2d) 751 (Ct. App. 1986), that "[c]ourts will not interfere with the exercise of discretion by school boards in matters committed by law to their judgment unless there is clear evidence that the board has acted corruptly, in bad faith, or in clear abuse of its powers." *Id.* at 227-28, 345 S.E. (2d) at 753.

Plaintiffs argue that bonded indebtedness would be less expensive than the lease-purchase method, and that had the voters been informed the Board was considering this alternative, they might have approved the bonds. In *Sarrat v. Cash*, 103 S.C. 531, 88 S.E. 256 (1916), however, this Court held that the power and duty of the trustees is continuing and inalienable. *Id.* at 535, 88 S.E. at 258. In *Sarrat*, Plaintiffs alleged that voters had approved a bond referendum based on representations from the trustees that a school would be built at a particular location. When the trustees later attempted to build at a different site, the Plaintiffs sought an injunction. The Court denied the injunction and upheld the trustees' right to exercise its discretion, stating as follows:

> It would be contrary to public policy to allow public officers who are charged with the duty of exercising their judgment and discretion . . . to bind or fetter themselves by promise or representation to . . . electors of . . . the district so that they could not, at all times, act freely and impartially. . . . The power was conferred upon them for public purposes, and it could not be lawfully bartered away to influence . . . votes in the election. The electors are presumed to have known this. Therefore they had no legal right to rely upon the alleged representations, or to be influenced by them in . . . voting in the election.

*Id.* at 536, 88 S.E. (2d) at 258. In light of these standards, the

Board's selection of the lease-purchase alternative cannot be deemed a clear abuse of discretion.

Plaintiffs also allege that the District abused its discretion in selecting the proposed site for the new school. Neighboring jurisdictions have held that the right and duty to select school sites is vested in the sound discretion of local school authorities and courts will not restrain or otherwise interfere with the selection unless it appears local authorities have violated some provision of law or have manifestly abused their discretion. *See Smith v. Ouzts*, 214 Ga. 144, 103 S.E. (2d) 567 (Ga. 1958); *McKenzie v. Walker*, 210 Ga. 189, 78 S.E. (2d) 486 (Ga. 1953); *Wayne County Bd. of Educ. v. Lewis*, 231 N.C. 661, 58 S.E. (2d) 725 (N.C. 1950). The Plaintiffs in the present case have not demonstrated that the Board's selection of the proposed site for the new school is unlawful, or that there is some provision of law that would prevent the Board's construction on the site.

The Plaintiffs' final contention is that they should be issued a writ of mandamus to compel the Board to repair existing schools in the district and to reopen the Swansea Intermediate School. To obtain a writ of mandamus requiring the performance of an act, the applicant must show 1) a duty of respondent to perform the act, 2) the ministerial nature of the act, 3) the applicant's specific legal right for which discharge of the duty is necessary, and 4) a lack of any other legal remedy. *Willimon v. City of Greenville*, 243 S.C. 82, 132 S.E. (2d) 169 (1963).

Plaintiffs allege violations of S.C. Code Ann. Regs. § 43-180, which provides in pertinent part that school buildings and grounds shall be kept clean and comfortable, shall be properly maintained, safe, and attractive, and that all operating school facilities shall comply with safety regulations prescribed by the State Fire Marshal and with sanitation and health regulations prescribed by the State Board of Health. Plaintiffs argue that this regulation, by using "shall," prescribes mandatory conduct amounting to ministerial duties of the Board. We disagree.

The duties of public officials are generally classified as ministerial and discretionary (or quasi-judicial). The duty is ministerial when it is absolute, certain, and imperative, involving merely the execution of a specific duty

arising from fixed and designated facts. It is ministerial if it is defined by law with such precision as to leave nothing to the exercise of discretion. In contrast, a quasi-judicial duty requires the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. *See Jensen v. Anderson County Dep't of Social Serv.*, 304 S.C. 195, 403 S.E. (2d) 615 (1991); *Long v. Seabrook*, 260 S.C. 562, 197 S.E. (2d) 659 (1973); *Godwin v. Carrigan*, 227 S.C. 216, 87 S.E. (2d) 471 (1955).

Although Regulation § 43-180 does require the performance of the listed duties, we hold the duties are not ministerial. The Board must still exercise its discretion in selecting which repairs shall be completed based on priorities of need and the funds available. The regulation does not prescribe narrow legal duties, but rather mandates that the Board exercise its discretionary authority to maintain the schools to provide for the best interests of the district. A writ of mandamus is not appropriate for this discretionary authority as it would place the Court in the position of deciding where repairs are most needed, which is a function of the local Board. For similar reasons, we hold the Court should not mandate the reopening of the Swansea Intermediate School. The Board has broad discretion in selecting and managing school sites and has no specific legal duty to reopen a particular school.

The dismissal of the trial court is Affirmed.

CHANDLER, Acting C.J., MOORE, J., and GEORGE T. GREGORY, Jr., Acting Associate Justice, concur.

FINNEY, J., dissents in separate opinion.

FINNEY, Justice, dissenting:

I respectfully dissent. The only issue before the Court is whether appellants' complaint states a cause of action for an injunction. The trial court held it did not, and granted respondents' Rule 12(b)(6), SCRCP, motion to dismiss. I would reverse.

Appellants' complaint asserts that the school board approved the lease/purchase agreement despite the electors de-

feat of a school bond issue referendum and that this action was both an illegal nullification of the referendum and an abuse of discretion. Appellants' allege irreparable harm if the respondents are allowed to proceed with purchasing land and building schools, and assert they have no adequate remedy at law. Appellants do not question the constitutionality of lease/purchase agreements, but rather challenge the propriety and availability of that procedure under these facts.

A Rule 12(b)(6) motion is addressed solely to the sufficiency of the allegations in the complaint. *Toussaint v. Ham*, 292 S.C. 415, 357 S.E. (2d) 8 (1987). In my view, appellants' complaint, on its face, alleges facts which, if proven, would entitle appellants to relief. *See Blandon v. Coleman*, 285 S.C. 472, 330 S.E. (2d) 298 (1985).

Furthermore, for the reasons stated in my dissent in *Caddell v. Lexington School Dist. 1*, 296 S.C. 397, 373 S.E. (2d) 598 (1988), I disagree with so much of the majority opinion as indicates that there must be an invocation of the taxing powers in order for a debt to be classified as a general obligation debt. Thus, I would reverse the trial court's grant of the school district's motion to dismiss.