# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

The State, Petitioner,

v.

Kenneth Taylor, Respondent.

Appellate Case No. 2020-001184

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Spartanburg County
J. Mark Hayes II, Circuit Court Judge

---

Opinion No. 28085
Heard September 21, 2021 – Filed February 23, 2022

---

## AFFIRMED AS MODIFIED

---

Attorney General Alan McCrory Wilson and Senior Assistant Deputy Attorney General William M. Blitch Jr., both of Columbia; and Solicitor Barry Joe Barnette, of Spartanburg, for Petitioner.

Kenneth Taylor, of Inman, pro se.

Jason Scott Luck, of Bennettsville, for Amicus Curiae South Carolina Association of Criminal Defense Lawyers.

---

**JUSTICE JAMES:** Kenneth Taylor was charged with driving under the influence (DUI). The magistrate court dismissed the charge, finding the State failed to comply with subsection 56-5-2953(A)'s requirement that the DUI incident site video recording "show" the defendant being advised of his *Miranda*[1] rights. The circuit court and court of appeals affirmed. *State v. Taylor*, Op. No. 2020-UP-215 (S.C. Ct. App. filed July 15, 2020). We granted the State's petition for a writ of certiorari. In this opinion, we address two issues: (1) the meaning of the word "show" as it is used in subsection 56-5-2953(A) and (2) whether per se dismissal of a DUI charge is the proper remedy for a video's failure to "show" a DUI defendant being advised of his *Miranda* rights at the incident site.[2]

## Background

At approximately 4:35 a.m. on June 11, 2015, Lance Corporal R.B. Thornton of the South Carolina Highway Patrol received a call from Spartanburg County Sheriff's Deputy Tony Woodward. Deputy Woodward requested assistance for a potentially impaired driver who had pulled his vehicle to the side of the road. Corporal Thornton promptly responded by activating his blue lights, which triggered his patrol car's exterior camera to begin recording.

When he arrived on scene, Corporal Thornton approached Taylor's vehicle. Corporal Thornton detected the smell of alcohol, saw an open container of beer in the vehicle, and noticed Taylor's speech was slurred. Taylor admitted he had been drinking alcohol, so Corporal Thornton asked Taylor to recite the alphabet from E to X. Taylor skipped from R to X—omitting S, T, U, V, and W. When Corporal Thornton asked Taylor about the omitted letters, Taylor stated the letters came after X. Taylor was unable to provide basic personal information and stated he was "shook up." Corporal Thornton arrested Taylor for DUI and placed Taylor in his patrol car.

After a brief conversation with Deputy Woodward, Corporal Thornton sat in the driver's seat of the patrol car and began advising Taylor of his *Miranda* rights. Corporal Thornton did not activate his in-car camera. As a result, both Corporal

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] Taylor has not participated in these proceedings since the circuit court's ruling, and his counsel was relieved by the court of appeals. The South Carolina Association of Criminal Defense Lawyers (SCACDL) filed an amicus brief with this Court, and we granted SCACDL's request to present oral argument. We refer to SCACDL's arguments as those of Taylor.

Thornton and Taylor can be heard, but neither of them can be seen. When Corporal Thornton asked Taylor if he understood the *Miranda* warnings, Taylor—still off camera—responded, "Yes, sir." The camera was adjusted to show both men and the car's interior only after Corporal Thornton began driving Taylor to the police station.

The case proceeded to trial before a Spartanburg County magistrate. Citing subsection 56-5-2953(A), Taylor moved to dismiss the DUI charge because the video recording did not "show" him being advised of his *Miranda* rights. The language from subsection 56-5-2953(A) to which Taylor referred provides that a person who violates a DUI statute "must have his conduct at the incident site . . . video recorded." The statute further provides that the video recording "<u>must</u> . . . <u>show</u> the person being advised of his *Miranda* rights." § 56-5-2953(A)(1)(a)(iii) (emphasis added).

The magistrate granted the motion, stating, "simple logic indicates that to 'show' something at least always includes a visual element," and "[i]n our society[,] it is clear the word 'show' means 'something visible.'" The magistrate concluded per se dismissal was proper pursuant to *City of Rock Hill v. Suchenski*, 374 S.C. 12, 646 S.E.2d 879 (2007), because the recording did not fully comply with subsection (A) and the State did not argue any subsection (B)[3] exceptions applied.

The circuit court affirmed the magistrate court, the court of appeals affirmed the circuit court, and we granted the State's petition for a writ of certiorari to review the court of appeals' decision. As we will explain, the magistrate court correctly interpreted the meaning of the word "show" as used in subsection 56-5-2953(A); however, we hold that from this point forward, failure to show a DUI defendant being advised of his *Miranda* rights does not mandate per se dismissal.

## Discussion

## I.

The State argues subsection 56-5-2953(A) does not require a defendant to "be 'seen' during the reading of *Miranda* [because] the statutory interpretation most consistent with the legislative intent would only require the State to 'make apparent'

---

[3] Subsection (B) provides in part: "Failure by the arresting officer to produce the video recording required by this section is not alone a ground for dismissal of any charge made pursuant to Section 56-5-2930 . . . if [an exception applies]." S.C. Code Ann. § 56-5-2953(B) (2018). The State acknowledges no exceptions apply.

or 'demonstrate' he was read his *Miranda* rights." The State therefore contends that even if a defendant is not seen on the video recording while being advised of his *Miranda* rights, the recording still "shows" the advisement of *Miranda* if the defendant and arresting officer can be heard. Taylor argues the word "show" in subsection 56-5-2953(A) includes both visual and audible components under *State v. Kinard*, 427 S.C. 367, 831 S.E.2d 138 (Ct. App. 2019), *cert. dismissed as improvidently granted*, 429 S.C. 614, 840 S.E.2d 924 (2020), and *State v. Sawyer*, 409 S.C. 475, 763 S.E.2d 183 (2014). We agree with Taylor.

A question of statutory interpretation is a question of law, which is subject to de novo review and which we are free to decide without deference to the courts below. *State v. Alexander*, 424 S.C. 270, 274-75, 818 S.E.2d 455, 457 (2018); *State v. Whitner*, 399 S.C. 547, 552, 732 S.E.2d 861, 863 (2012). Where a statute's language is plain, unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed, and the Court has no right to impose another meaning. *Gay v. Ariail*, 381 S.C. 341, 345, 673 S.E.2d 418, 420 (2009). However, if a statute is ambiguous, the Court must construe its terms. *Lester v. S.C. Workers' Comp. Comm'n*, 334 S.C. 557, 561, 514 S.E.2d 751, 752 (1999).

The primary rule of statutory construction is "to ascertain and effectuate the intent of the legislature." *State v. Pittman*, 373 S.C. 527, 561, 647 S.E.2d 144, 161 (2007). A statute's language must be construed in light of its intended purpose, and "[w]henever possible, legislative intent should be found in the plain language of the statute itself." *State v. Gaines*, 380 S.C. 23, 33, 667 S.E.2d 728, 733 (2008). "The Court should give words 'their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation.'" *State v. Sweat*, 386 S.C. 339, 350, 688 S.E.2d 569, 575 (2010) (quoting *Sloan v. S.C. Bd. of Physical Therapy Exam'rs*, 370 S.C. 452, 469, 636 S.E.2d 598, 607 (2006)). A statute's language should be "read in a sense which harmonizes with its subject matter and accords with its general purpose." *Id.* "[A] court should not focus on any single section or provision but should consider the language of the statute as a whole." *Mid-State Auto Auction of Lexington, Inc. v. Altman*, 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996). The Court must reject a statutory interpretation if it leads to an absurd result that could not possibly have been intended by the legislature or that defeats plain legislative intent. *Sweat*, 386 S.C. at 351, 688 S.E.2d at 575.

Subsection 56-5-2953(A)'s introductory language plainly states that a person who violates a DUI statute "must have his conduct at the incident site . . . video recorded." Most importantly, this subsection provides that the video recording "<u>must</u> . . . <u>show</u> the person being advised of his *Miranda* rights." § 56-5-2953(A)(1)(a)(iii) (emphasis added). Again, the State argues this language requires

the video to simply "demonstrate" or "make apparent" that *Miranda* warnings are administered to the defendant. We disagree. This interpretation of the word "show" ignores the 2009 amendment to subsection 56-5-2953(A), which changed the relevant language from the video recording "must <u>include</u> the reading of *Miranda* rights" to the video recording must "<u>show</u> the person being advised of his *Miranda* rights." (emphases added). The General Assembly could have retained the prior language or used other terms, but it intentionally amended the statute to add a visual requirement. *See Davenport v. City of Rock Hill*, 315 S.C. 114, 117, 432 S.E.2d 451, 453 (1993) ("It is never to be supposed that a single word was inserted in the law of this state without the intention of thereby conveying some meaning."); *Nexsen v. Ward*, 96 S.C. 313, 321, 80 S.E. 599, 601 (1914) ("[E]very word, clause, and sentence must be given some meaning, force, and effect, if it can be done by any reasonable construction."). The General Assembly chose to amend the statute as it did, and we cannot engage in forced construction of the words the General Assembly chose to employ.

The State's interpretation also cuts against one of the primary purposes of the DUI video recording statute: seeing the defendant and officer on camera reduces "swearing contests" in DUI trials, captures their interactions, and ensures the use of fair procedures to protect the defendant's rights. *State v. Henkel*, 413 S.C. 9, 14-15, 774 S.E.2d 458, 461-62 (2015); *State v. Taylor*, 411 S.C. 294, 306, 768 S.E.2d 71, 77 (Ct. App. 2014); *State v. Elwell*, 396 S.C. 330, 336, 721 S.E.2d 451, 454 (Ct. App. 2011). A video recording that visually confirms what is audible leaves little room for doubt as to the procedures used by, and the defendant's interactions with, the arresting officer. Again, by amending subsection 56-5-2953(A) in 2009, the General Assembly chose to change the word "include" to "show." That we cannot ignore. We hold that in order for a DUI recording to "show" a defendant being advised of his *Miranda* rights, the defendant and arresting officer must be visually seen and audibly heard.

## II.

Before the magistrate court and the circuit court, the State argued that even if the administering of *Miranda* warnings must be seen on camera, per se dismissal of the DUI charge is not the appropriate remedy when that requirement is not met. Neither court ruled on that issue; consequently, the issue of per se dismissal was not preserved for further appellate review, and the State did not ask the court of appeals or this Court to rule on the issue. However, we take this opportunity to clarify that moving forward, when a DUI suspect is not Mirandized in accordance with the statute, statements made by the suspect during custodial interrogation are to be considered given under the cloud of a *Miranda* violation. However, just as is proper

when there is a *Miranda* violation in any other kind of case, suppression of tainted evidence—not per se dismissal of the DUI charge—is the proper remedy.[4] We believe this approach is consistent with the evolution of our case law.

In *Suchenski*, an officer's recording device unexpectedly ran out of tape at a DUI incident site. 374 S.C. at 14, 646 S.E.2d at 879. As a result, although two field sobriety tests and the *Miranda* advisement were recorded, a third field sobriety test and the defendant's arrest were not recorded. Looking to the prior version of subsection 56-5-2953, we concluded the statute "provides for dismissal of charges when the statute is inexcusably violated." *Id.* at 16, 646 S.E.2d at 881. *Suchenski* has since been applied by this Court and the court of appeals to hold that under the pre-2009 version of the statute, unless an exception applies under subsection 56-5-2953(B), failure to fully comply with subsection (A) mandates dismissal of a DUI charge. *Town of Mt. Pleasant v. Roberts*, 393 S.C. 332, 347-49, 713 S.E.2d 278, 285-87 (2011); *State v. Johnson*, 396 S.C. 182, 191-92, 720 S.E.2d 516, 521-22 (Ct. App. 2011).

In 2014, we considered a prior version of subsection 56-5-2953(A) that required DUI test site recordings to include *Miranda* warnings. *Sawyer*, 409 S.C. at 477, 763 S.E.2d at 184. In *Sawyer*, the DUI defendant was arrested and taken to the local jail for a breath test. Because of an audio failure in the testing room, although the officer appeared to be reading the defendant his *Miranda* and implied consent rights, neither the officer nor the defendant could be heard during the exchange. The trial court denied the defendant's motion to dismiss the charge but granted the defendant's motion to suppress the video recording and all evidence that he was offered or took a breath test, including its results. The State appealed the suppression order, the court of appeals affirmed, and this Court granted the State's petition for a writ of certiorari. Relying on *Suchenski*, we upheld the trial court's suppression order in a 3-2 decision, observing: "While defects in evidence do not generally affect admissibility . . . the Court has interpreted the statute to require strict compliance with Section (A) as a prerequisite for <u>admissibility</u>, unless an exception in Section (B) applies." *Id.* at 481, 763 S.E.2d at 186. (emphasis added). We ruled only upon

---

[4] The video requirement may still be excused altogether if the provisions of subsection 56-5-2953(B) apply. The suppression of tainted evidence does not apply to circumstances falling within the parameters of subsection (B).

the issue of whether the trial court's suppression order should be upheld; the issue of per se dismissal of the DUI charge was not before us.[5]

Finally, in *State v. Gordon*, an officer subjected the defendant to a horizontal gaze nystagmus (HGN) test at the DUI incident site. 414 S.C. 94, 96-97, 777 S.E.2d 376, 377 (2015). The incident site was dark and the lighting was poor, so the officer relocated the defendant toward the headlights of his patrol car and shined a flashlight on the defendant's face. Because HGN tests focus on eye movement, we concluded "common sense dictates that the head must be visible on the video." *Id.* at 99, 777 S.E.2d at 378. Further, because the defendant's face was indisputably shown on the video, subsection 56-5-2953(A)'s "requirement that the head be visible on the video [was] met and the statutory requirement that the administration of the HGN field sobriety test be video recorded [was] satisfied." *Id.* at 100, 777 S.E.2d at 379. Most pertinent to the case at bar, we acknowledged that even if the recording was "of such poor quality that its admission [was] more prejudicial than probative, the remedy would not be to dismiss the DUI charge." *Id.* Rather, we held "the remedy would be to redact the field sobriety test from the video and exclude testimony about the test." *Id.* We further held that notwithstanding suppression of the HGN test video and testimony, there was "still sufficient evidence to present this case to a jury for resolution." *Id.*

Again, subsection 56-5-2953(A) plainly requires that *Miranda* warnings be depicted visibly and audibly on the video recording. However, following the logic we employed in *Gordon*, when the statutory *Miranda* requirement is not satisfied, suppression of "tainted" evidence—not per se dismissal of the DUI charge—is the proper remedy. *Miranda* is a constitutional construct that mandates suppression of evidence in certain circumstances, not per se dismissal of the underlying charge. Of course, the suppression of evidence that springs from a *Miranda* violation sometimes results in dismissal of the underlying charge, but per se dismissal is not the rule. Our approach does violence neither to the General Assembly's intent in amending subsection 56-5-2953(A) nor to the body of law that is *Miranda*.

---

[5] In dicta, the *Sawyer* majority mentioned that "[t]he only arguable error of law was the circuit court's failure to dismiss the charges once it determined that the State did not produce a videotape meeting the requirements of [subsection 56-5-2953(A)] and that it did not meet any of the exceptions in (B). Respondent, however, did not appeal the circuit court's denial of his request that the charges be dismissed." *Id.* at 482 n.6, 763 S.E.2d at 186 n.6 (citations omitted).

An illustration shows the absurdity of per se dismissal when *Miranda* warnings are not shown on the video. Assume that in a setting similar to the one in which Taylor found himself, the video recording did not visually depict the administering of *Miranda* rights to a DUI defendant, and assume the defendant did not utter a written or verbal word to law enforcement from the beginning of the encounter through the end of the DUI trial. It would be absurd to require per se dismissal of the DUI charge simply because *Miranda* warnings were not visually depicted on camera.

"The purpose of the *Miranda* warnings is to apprise the defendant of [his] constitutional privilege to not incriminate [himself] while in the custody of law enforcement." *State v. Evans*, 354 S.C. 579, 583, 582 S.E.2d 407, 409 (2003). The United States Supreme Court has clearly prescribed the evidentiary remedy when *Miranda* warnings are not administered and custodial interrogation elicits statements from a defendant. *Miranda*, 384 U.S. at 444 ("[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."). Therefore, in ordinary circumstances, the proper remedy for a *Miranda* violation depends upon whether custodial interrogation occurred and, if it did, whether the defendant uttered any statement(s) elicited by the interrogation.

Law enforcement's failure to give—or to properly give—*Miranda* warnings in any given criminal case does not always result in the suppression of a defendant's statements or any other evidence. The factual lead-up to a suppression hearing—in both DUI and non-DUI cases—has many variations, and we cannot possibly address them all in one opinion. Our trial courts are well-equipped to handle shifts in factual scenarios, including those in DUI cases in which *Miranda* warnings are not shown on video.

## Conclusion

We affirm the court of appeals' holding that subsection 56-5-2953(A) requires a video recording to visually depict a defendant being advised of his *Miranda* rights at the incident site. Because the question of whether per se dismissal of Taylor's DUI charge was appropriate is not before us, we affirm the dismissal. However, we hold that from this point forward, suppression of tainted evidence flowing from the failure to administer *Miranda* warnings in accordance with subsection 56-5-2953(A)—not per se dismissal of the DUI charge—is the proper remedy.

**AFFIRMED AS MODIFIED.**

**BEATTY, C.J., KITTREDGE, HEARN and FEW, JJ., concur.**